(71 South. 241)

No. 20375.

SCHAFFTER v. IRWIN et al.

(Feb. 21, 1916. On Application for Rehearing, March 20, 1916.)

(Syllabus by the Court.)

1. BILLS AND NOTES ⊚⇒494—ACTIONS—BURDEN OF PROOF.

In a suit upon an obligation absolute in character and free from taint on its face, where the defense of the indorser on the note is that the transaction was contra bonos mores, against public policy, and amounts to a suppression of

---

[1] 138 La. 989.

a commission of a felony, the burden of proof is upon the person making the allegations.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. ☞494.]

*(Additional Syllabus by Editorial Staff.)*

2. BILLS AND NOTES ☞226—ACCOMMODATION INDORSEMENT—CONSIDERATION.

The credit given to the maker of a note is consideration sufficient to bind an accommodation indorser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 534–541; Dec. Dig. ☞ 226.]

3. BILLS AND NOTES ☞525—ACTIONS—EVIDENCE.

In a suit against an accommodation indorser of a note, evidence *held* insufficient to sustain allegations that the plaintiff knew that the notes were forged or fraudulently issued, that the transaction was contra bonos mores, against public policy, and amounted to a suppression by plaintiff of the commission of a felony by the maker of the notes, and that plaintiff conspired and confederated with the maker to obtain from defendant his indorsement.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. ☞ 525.]

On Application for Rehearing.

4. BILLS AND NOTES ☞478 — ACTIONS — PLEADING—"CONSPIRE AND CONFEDERATE."

In an allegation that the holder of a note conspired and confederated with the maker to obtain defendant's indorsement, the word "conspire," associated with "confederate," does not necessarily connote an evil intention.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1522, 1523; Dec. Dig. ☞ 478.

For other definitions, see Words and Phrases, First and Second Series, Conspire.]

O'Niell, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Florian Schaffter against Michael Irwin and another. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

Hall, Monroe & Lemann and Watts K. Leverich, all of New Orleans, for appellant. McCloskey & Benedict, of New Orleans, for appellees.

SOMMERVILLE, J. Plaintiff sues defendants, Michael Irwin and James J. Woulfe, upon obligations absolute in character and free from taint on their faces. They are two promissory notes for $5,000 each, with 8 per cent. per annum interest from date March 4, 1911, drawn by James J. Woulfe to his own order, and indorsed by himself and Michael Irwin, payable in 9 and 18 months, respectively, after date.

Woulfe is a bankrupt, and made no appearance in the case, except as a witness for Irwin.

Michael Irwin answered, denying that the notes were issued for valuable considerations, and alleged that said notes—

"were had and obtained by the said Florian Schaffter, the petitioner, and the said James J. Woulfe to secure said Florian Schaffter in the payment of certain alleged mortgage notes, forming a previous transaction between said Woulfe and said Schaffter, and which mortgage notes, as a fact, were forged, or, in the alternative, fraudulently issued, a fact which was to the knowledge of said Schaffter and said Woulfe, but not to your respondent's knowledge at the time that your respondent indorsed the notes herein sued upon; that there was no legal consideration given by the maker, or received by the holder, for the notes herein sued upon; that the transaction was contra bonos mores, against public policy, and amounts to a suppression by said Schaffter of a commission of a felony by said Woulfe, for the purpose of reimbursing himself, Schaffter, through the indorsement of Mr. Irwin; and respondent is, and was, an innocent third party in the matter, knew nothing whatever of the forgery of the notes of which the present notes sued on were intended to secure payment; that the said Florian Schaffter conspired and confederated with the said Woulfe to obtain from respondent his indorsement of the notes sued upon for the above purposes, in violation of the laws of this state, and contrary to rules of public order; and that said Schaffter is without cause or right of action in the premises."

There was judgment in favor of defendant Michael Irwin, dismissing plaintiff's suit, and the latter has appealed.

The record shows that between 1906 and 1911 Schaffter had bought mortgage paper from Woulfe to the extent of about $31,000; that in February, 1911, Schaffter became suspicious of Woulfe's dealings with him, and demanded an explanation from him of the various transactions which had taken place between them. Woulfe admitted to

Schaffter at that time that about $15,000 of the notes bought by him (Schaffter) were bad, or not good; and, upon being pressed for a settlement, Woulfe offered three personal notes for $5,000 each, two to be indorsed by Michael Irwin, and the third by Edward Irwin. The offer was accepted by Schaffter after he had investigated the financial standing of the Irwins. The three notes, indorsed as agreed upon, were afterwards delivered to Schaffter; and this suit is upon the two notes indorsed by Michael Irwin.

[2] There was consideration for the notes as between the maker, Woulfe, and the holder, the plaintiff. The latter had given to the former $31,000 in cash for negotiable paper which Woulfe had represented to him to be genuine, and afterwards admitted that $15,-000 of the paper was bad. Woulfe clearly owed the money to plaintiff; and this is all that was necessary to bind the indorser, Michael Irwin. The paper indorsed is in every respect valid and binding between the holder and maker; the notes having been given to plaintiff before maturity. The value of the paper was not less by the fact that the indorser signed as an accommodation indorser, for whatever accommodation there was was between the maker and the indorser. Evidently the purpose was security, which the plaintiff desired, and which the maker obtained; and, though without pecuniary consideration as to the indorser, it is binding upon him. The credit given to the maker is consideration sufficient to bind the indorser. Paper thus indorsed in the hands of the creditor is binding. Bank of Morgan City v. Herwig, 121 La. 513, 46 South. 611.

[1, 3] Defendant has failed to prove the allegation in his answer that Schaffter knew that the mortgage notes held by him, and which Woulfe admitted to be bad, "were, as a fact, forged, or, in the alternative, fraudulently issued," or "that the transaction was contra bonos mores, against public policy, and amounts to a suppression by said Schaffter of the commission of a felony by said Woulfe," and "that the said Florian Schaffter conspired and confederated with the said Woulfe to obtain from your respondent his indorsements upon the notes herein sued upon for the above purposes, in violation of the laws of this state."

The evidence in the record shows that the plaintiff, Schaffter, was not acquainted with the defendant Michael Irwin, and had never seen him up to the day of the trial of the cause in the district court; that the offer of Woulfe to give his individual note, with a responsible indorser, for the indebtedness due by him to Schaffter was voluntarily made by Woulfe, and accepted by Schaffter, after he had investigated the standing of the Irwins, who had been offered by Woulfe as the indorsers on the proposed notes.

The evidence further shows that Woulfe did not admit to Schaffter, at the time that he offered to settle with him, that $15,000 worth of the notes held by Schaffter were forged. Woulfe stated to Schaffter that the notes were bad; and Schaffter verified that statement to the extent that some of the notes held by him had never been recorded, while the inscriptions of others had been canceled without his knowledge or consent, and partial payments had been made on others. Mr. Schaffter testified on the point as follows:

"We went to see Mr. Woulfe and asked him to show us the acts representing the notes that were not recorded. Mr. Woulfe looked over his acts for a few moments, and did not find them. In a few moments he came to us, and said, 'Those notes are not good, but I wish to make them good—I shall pay them; I am going to make them good.'" "We met him another time, and we went over the mortgages, and he told us that a number of them were bad, and that a number were good. * * * At no time was the word 'forgery' mentioned, or even suspected."

Some of the notes—

"had been paid, but not canceled, and some of them had had payments on account, but the

payments had not been entered on the backs of the notes. That is the way that the notes were accounted bad. * * * He offered, without us paying anything, or having a chance to say a word, he said: 'I am going to make those notes good,' and he offered, first, * * * a life insurance policy, which I declined; he offered personal notes, which we accepted, with proper indorsements. I did not know the gentlemen who indorsed the notes; had never seen them to this day, and don't know them. * * * He did not tell me that they (the notes which Woulfe admitted were not good) were forgeries."

The testimony of Mr. Schaffter on this point is not contradicted; and it is quite conclusive that plaintiff did not know that Woulfe had committed the crime of forgery, or that he had fraudulently issued the notes which he admitted to be bad; and it follows that Schaffter did not suppress a felony committed by Woulfe, or compound one.

Schaffter did not threaten Woulfe with criminal prosecution. When questioned on the matter, he testified:

"I proceeded to get what I could to protect myself, to get securities; I wanted something in place of the notes. I did not want those notes. * * * I was very anxious to get my money, but I had been most carefully warned by my lawyer that there was to be no promise of immunity, or threats of exposure; to be very particular about it. I was very particular about that. * * * We were not to suppress anything; we were to say nothing."

Schaffter's testimony on this point is corroborated by Woulfe, a witness for defendant, who said:

"Mr. Schaffter said that he did not want, or desire, to prosecute me; that he did not desire that; that all he wanted was his money, and suggested then that I furnish them with some security. * * * I offered him the indorsement of Mr. Irwin on these personal promissory notes. * * * Subsequently, I gave him another promissory note of mine; I think I made that payable two years after date, dated in the same part, or latter part, of March, or a while later than the present notes in suit, indorsed by Edward Irwin, for $5,000."

It does not appear that there was any threat on the part of the plaintiff to prosecute Woulfe criminally, or any intimation, if defendant Irwin would assist Woulfe, that he would not do so. Plaintiff certainly had

the right to demand the debt due to him by Woulfe, and if it was not paid, to demand security for the payment thereof.

Defendant Irwin has not alleged error or fraud; and he has not shown that any error was caused by the plaintiff, or that he participated in any fraud.

It is argued that the law makes no distinction between a promise not to prosecute and the silent acquiescence in a crime, to enforce a civil payment; and section 856 of the Revised Statutes, which reads as follows, is referred to:

"If. any person having knowledge of the commission of any crime punishable with death, or imprisonment at hard labor, shall conceal and not disclose it to some committing magistrate or district attorney, on conviction he shall be fined not exceeding three hundred dollars, and imprisoned at hard labor or otherwise not exceeding twelve months, at the discretion of the court."

The evidence in the record is positive that the plaintiff did not know that the crime of forgery had been committed by Woulfe at the time Woulfe settled with him by giving to him the notes sued on. Therefore he did not conceal or suppress a crime. Plaintiff testified that he did not know of the forgeries committed by Woulfe for two years after the settlement had been made between them; and at that time Woulfe was being prosecuted by the state.

The testimony of plaintiff and his attorney, as well as that of Woulfe, witness for the defendant, is positive that no felony was compounded.

The notes sued upon were given for valid considerations, and the indorsements thereon by Michael Irwin, although an accommodation indorser, are binding upon him.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against Michael Irwin in the sum of $10,000, with 8 per cent. per annum interest on $5,000 from December 4, 1911; and the same inter-

est on $5,000 from September 4, 1912, with costs in both courts.

MONROE, C. J., takes no part.

## On Application for Rehearing.

PER CURIAM. Woulfe proposed to Schaffter to furnish the indorsement of Irwin, and Schaffter accepted the proposition. What took place between Woulfe and Irwin, Schaffter did not know. Irwin was a stranger to him, whom he met for the first time in his life on the day of the trial of this suit. The only participation of Schaffter in the obtaining of this indorsement, either in person or by his attorney, was that when Irwin came to Woulfe's office to give the indorsement, his (Schaffter's) attorney was present, and wrote the note that was to be indorsed.

[4] Reading defendant's answer in the light of these facts, with which the attorneys who prepared it must be assumed to have been acquainted, and construing it most strongly against the pleader, as must be done, since the pleader must be assumed to have stated his case as strongly as the circumstances would allow him to do, there is no allegation that Schaffter participated in any deception practiced by Woulfe upon Irwin, if any such there really was intended to be, even by Woulfe. There is no allegation that Schaffter knew that Irwin was uninformed of the circumstances which were leading to the furnishing of the indorsement by Woulfe. True, there is an allegation that he conspired and confederated with Woulfe to obtain this indorsement, but in ordinary parlance, the verb "conspire," especially when associated with "confederate," does not necessarily connote an evil intention. Two persons may "conspire and confederate" to do good, in the ordinary, untechnical sense, of the word "conspire" as thus used. Assuredly, as found in an indictment, or in the petition of a damage suit in tort, the allegation that the de-

fendant had conspired with another to commit the crime or the tort would import a guilty knowledge; but the reason is that in such a case the act in question involves in its very nature a guilty knowledge, and, hence to charge the act is to charge a guilty knowledge, and, by the same token, to charge that one conspired to do it is to charge guilty knowledge in the person so doing. But the obtaining of the indorsement in question in this case could involve deceit or wrong only if Irwin were not informed of the circumstances of the matter. Hence the allegation that Schaffter conspired and confederated with Woulfe to obtain this indorsement, when not accompanied by an allegation of Schaffter's having known of Irwin's ignorance of the circumstances, does not necessarily import guilt on the part of Schaffter. And, reading this answer in the light of the facts as subsequently developed on the trial, it is evident that the pleader did not make the specific allegation of guilty knowledge on the part of Schaffter simply because he knew he could not truthfully make it; that in confining himself to the vague allegation of conspiracy and confederation he was simply sailing as closely to the wind as was consistently possible.

Counsel insist that the court erred in finding that Schaffter did not know that a crime had been committed by Woulfe; but granting, for argument's sake, that Schaffter had this knowledge, the consideration of the note given by Woulfe and indorsed by defendant, and upon which the present suit is based, was not, as the learned counsel for defendant suppose and argue, the compounding or suppressing of this crime, but was the debt which Woulfe owed Schaffter. Woulfe owed this debt, and gave his note for it, and defendant indorsed this note. Conceding, for the sake of argument, that Schaffter failed in his civic duty of imparting to the officers charged with the administration of the crim-

inal laws that a crime had been committed, and thereby committed a crime, this would not preclude him from recovering upon a note given for a debt which Woulfe owed him independently altogether of the alleged compounding of the felony, upon which suit might have been brought and judgment obtained. The fact that Woulfe, in giving this note, had done so in the hope and expectation, and even on the assurance, that Schaffter would not report him to ·the officers of justice would not have changed the legal situation, according to the following decision, where the cases on this point are reviewed, and which is authoritative. Yowell & Williams v. Walker, 118 La. 28, 42 South. 635.

Rehearing denied.


MONROE, C. J., takes no part. O'NIELL, J., dissents.