Flower & King vs. O'Bannon.

## No. 313.

### FLOWER & KING VS. J. W. O'BANNON.

1. When accounts between factor and planter have been repeatedly rendered to the latter, and have been received without objection and with petitions for indulgence and promises to pay, he can not afterwards question the correctness of the items thereof or of the charges of interest therein contained.

2. Prior at least to Act 78 of 1888, such accounts became stated accounts prescriptible only by ten years. The Act of 1888 need not be construed in this case, because under no view could it operate the prescription pleaded.

3. If the debtor do not impute his payments when made, the creditor may do so, and if he make such imputation and inform the debtor thereof by account rendered which the debtor receives without objection, he can not afterwards question the imputation.

4. Mortgages can not be extended by implication to secure any other obligation than that expressly mentioned. A mortgage given to secure " $2500 for money advanced and acceptances made and to be made *during the present year* " cannot be extended to cover advances made after the expiration of the year. To do so by any implication from the subsequent dealings between the parties would involve the creation of a mortgage by parol or implication.

5. Where the balance due at a particular time in long accounts has never been struck and can not be ascertained without numerous and difficult calculations this court will not undertake such labor, but will remand the case for the purpose of ascertaining the amount.

APPEAL from the Third District Court, Parish of Claiborne. *Barksdale, J.*

*H. H. Hall* and *J. W. Holbert* for Plaintiffs and Appellants:

#### I.—PRESCRIPTION.

" A written acknowledgment is not necessary to constitute an account stated; an account rendered unless objected to within a reasonable time, is an account stated, *compte arrêté*, from its presumed approval." 28 An. 605; 26 An. 208; 27 An. 133; 20 An. 119; 19 An. 185; and authorities cited on page 208 of 26th An.

#### II.—INTEREST AND COMMISSIONS.

" Where mercantile accounts have been closed by rendition and acceptance without objection, the debtor can not thereafter object to charges of 8 per cent. interest and to compounding interest by capitalization of succession of balances." 39 An. 788.

Flower & King vs. O'Bannon.

" A stipulation in a contract between a planter and a commission merchant, by which the former agrees to secure the latter in a certain amount in any event, is not illegal, and may, therefore, be enforced against the planter, notwithstanding he has failed to make a crop." 23 An. 201; V. also 24 An. 159.

### III.—IMPUTATION OF PAYMENTS.

Art. 2163. C. C.  "The debtor of several debts has a right to declare, *when* he makes a payment, what debt he means to discharge."

Art. 2165, C. C.  "When the debtor of several debts has accepted a receipt by which the creditor has imputed what he has received to one of the debts specially, the debtor can no longer require the imputation to be made to a differ ent debt, unless there has been fraud or surprise on the part of the creditor."

30 An. 1225.  " Payments made by a debtor without special instructions as to their imputation will be imputed in accordance with the tacit agreement of the parties as disclosed by their dealings and correspondence. A debtor who receives, without objection, an account current from his creditor which imputes payments made by him to the less onerous part of his debt, is held to ratify by his silence the imputation of payments made in the account."

" It is, therefore, false doctrine to say that, where a factor who has made advances to a planter, and who has a mortgage upon his plantation to secure an antecedent debt, receives the crop of the planter, the proceeds of the crop must be imputed first to the payment of the mortgage debt, the residue going to discharge the debt incurred for supplies. The privilege vests upon the crop, and this privilege the crop must first discharge before any part of it may be applied to any other obligation." Richardson vs. Sheriff, 26 An. 657, and also 43 An. p. 1.

2 An. 24, Bloodworth vs. Jacobs: "The debtor has the right to make the imputation of any payment made by him. If he do not exercise this right the creditor may do so. When a debtor has accepted a receipt, in which a payment is imputed to a particular debt, it is irrevocable, unless in cases of surprise or fraud on the part of the creditor." C. C. 2161.

2 An. 810, Dunbar vs. Bullard: " Where a factor sends an account to his principal at the usual time, in which certain imputations are made by the former, and the latter affirms it, or *receives and acquiesces in it,* and no fraud or surprise is complained of, the imputation of payment must be considered as having been made by the authority of the principal, the ratification of the acts of the factor being tantamount to original imputation by the principal and relating back to time of the acts, which are the subject of ratification."

6 An. 774, Turen, Wilson & Co. vs. Lewis: " Where the plaintiff had carried on the business of making advances to a party on consignment, payments made to them in the course of that business will be imputed to the mercantile accounts and not to a mortgage note held by them on the party."

### IV.—THE MORTGAGE.

" Mortgages, under the hypothecary system of Louisiana, may be given to secure debts having no legal existence at the date of the mortgage. It is not essential, in such a mortgage, even with respect to third persons, that it should express on its face, that it was executed to secure future debts. It may be described as a security for existing debts, and yet used to protect those which in the contemplation of the parties, were to be created at a future time." 7 An. 288, 307.

‘ ‘ It is the *eventual* balance in the account current that is covered, not the isolated items as they fluctuate through its successive operations;’ whilst running, it can not be arrested at a particular period, when, by an offset of debits and credits, they might be equally balanced, the account destroyed, and the mortgage extinguished; the account can not thus be disintegrated; an aggregate is to be formed of its component parts; until the balance be struck, the relation of debtor and creditor can not be determined; on that balance it is—with whose ebb and tide it rises and falls—that the mortgage finally fastens itself, and which it finally secures.'' Hen. Dig , p. 940, No. 17; 7 An. 308.

*J. E. Moore* and *J. A. Richardson* for Defendant and Appellee:

When there is a question of payment, the payment will be imputed to the debt bearing a mortgage. 15 An. 174. L. Digest, p. 517, III, " of the imputation of payment.''

In order to interrupt prescription it must be acknowledged *in writing.* Acts 1888, No. 78, C. C. 3538.

An acknowledgment must not only be in writing, but must be of the debt claimed. 36 An. 407.

The opinion of the court was delivered by

FENNER, J.  The motion to dismiss has no merit and is overruled. Plaintiffs sue defendant for a balance of account and for the recognition and enforcement of a mortgage which they claim to hold to secure the same.  The questions involved logically divide themselves into two branches:

1. The amount of defendant's indebtedness to plaintiffs.

2. The extent to which that indebtedness is secured by the mortgage.

I.

We think there can be no doubt that plaintiffs are entitled to recover a personal judgment against defendant for the full amount claimed.  The dealings between the parties were in account current, running from March, 1887, to 1890.

Detailed statements of the account were repeatedly rendered to defendant, who received the same without objection, and made requests for indulgence, and repeated promises to pay.  It is too late for him now to contest the correctness of the items of the account, which, however, we consider sufficiently proved and not discredited. His objections to the charge of 8 per cent. interest, and to compounding of interest, are defeated by our decision in Allen vs. Nettles, 39 An. 788, where we said: " Defendant now seeks to overhaul these accounts from 1881, and claims, and was allowed, a deduction

of $407.01 for overcharges of interest at 8 per cent., and from the compounding thereof by capitalizing, in the succeeding accounts, the balances from those preceding. We think this was error. So far as these matters are concerned, the defendant can not go beyond the accounts which have been rendered to, and accepted by, him without objection."

The plea of prescription of three years against the earlier items of the account can not avail.

An account rendered and not objected to within a reasonable time, is an account stated and only prescribed by ten years. Darley vs. Lastrapes, 38 An. 605; Blanc vs. Scruggs, 26 An. 208, and other authorities therein referred to.

Such was the undoubted law, at least up to the adoption of Act 78 of 1888, which prescribes *all* accounts by three years. We need not presently construe this act, because it was only passed on July 12, 1888, after the accounts had been rendered and converted into stated accounts prescriptible by ten years. This suit was brought on May 2, 1890. On no basis of calculation of the prescriptive term could it have accrued prior to this suit.

## II.

Defendant claims that the debt secured by the mortgage was entirely extinguished by payment, on the ground that all the remittances and the proceeds of cotton shipped by him should be imputed to the mortgage as the most onerous debt.

It is not pretended that defendant declared any special imputation when he made the payments.

On the other hand the accounts rendered by the plaintiffs show that they imputed the payments otherwise than to the mortgage indebtedness, the accounts stating the balance due as remaining secured by the mortgage.

The law on the subject is well stated in the following authorities cited in plaintiff's brief:

Art. 2163, C. C. "The debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge."

Art. 2165, C. C. "When the debtor of several debts has accepted a receipt by which the creditor has imputed what he has received to one of the debts specially, the debtor can no longer require the im-

putation to be made to a different debt, unless there has been fraud or surprise on the part of the creditor."

30 An. 1225. "Payments made by a debtor without special instructions as to their imputation will be imputed in accordance with the tacit agreement of the parties as disclosed by their dealings and correspondence. A debtor who receives, without objection, an account current from his creditor which imputes payments made by him to the less onerous part of his debt is held to ratify by his silence the imputation of payments made in the account."

. 2 An. 24, Bloodworth vs. Jacobs: "The debtor has the right to make the imputation of any payment made by him. If he do not exercise this right the creditor may do so. When a debtor has accepted a receipt, in which a payment is imputed to a particular debt, it is irrevocable, unless in cases of surprise or fraud on the part of the creditor. C. C. 2161."

2 An. 810, Dunbar vs. Bullard: "Where a factor sends an account to his principal at the usual time, in which certain imputations are made by the former, and the latter affirms it, or receives and acquiesces in it, and no fraud or surprise is complained of, the imputation of payment must be considered as having been made by the authority of the principal, the ratification of the acts of the factor being tantamount to original imputation by the principal and relating back to the time of the acts, which are the subject of ratification."

6 An. 774, Turen Wilson & Co. vs. Lewis: "Where the plaintiff had carried on the business of making advances to a party on consignment, payments made to them in the course of that business will be imputed to the mercantile accounts and not to a mortgage note held by them on the party."

Moreover, as appears from the mortgage, the advances were made to aid defendant in his planting operations and were specially secured by a privilege on his crops, and, as heretofore held, the proceeds of the crop were imputable to the privilege and not the mortgage.

"It is, therefore, false doctrine to say that, where a factor who has made advances to a planter, and who has a mortgage upon his plantation to secure an antecedent debt, receives the crop of the planter, the proceeds of the crop must be imputed first to the payment of the mortgage debt, the residue going to discharge the debt incurred for supplies. The privilege vests upon the crop, and this

privilege the crop must first discharge before any part of it may be applied to any other obligation." Richardson vs. Sheriff, 26 An. 657, and also 43 An. p. 1.

We encounter a question of greater difficulty in determining what part of the debt is, or was ever, secured by the mortgage.

The mortgage was not given to secure advances generally, or to secure any resulting balance of account without limitation as to time. Its terms explicitly declare that it is given to secure the "sum of $2500 for money advanced and acceptances made and to be made *during the present year.*" Plaintiffs seem to consider that the "present year" means the year running from the date of the mortgage, but such is not a natural construction of the words in their ordinary use, which obviously suggests the year 1887; and this is confirmed by the fact that the notes given to represent the debt matured respectively on 1st December, 1887, and 1st January, 1888.

We can not see our way to holding that this mortgage was intended to secure, or did secure, any advances or acceptances not made during the year 1887, or any balance of account beyond that existing on the last day of the year.

We have held that "mortgages are so far *stricti juris* that they can not be extended, by implication, to secure any other obligation than that expressly mentioned." Schadel vs. St. Martin, 11 An. 175.

This principle is unquestionably sound. We should violate it grossly, if we acceded to the suggestion of plaintiffs' counsel, that, by the dealings of the parties, the security of the mortgage has been extended to cover subsequent advances. We must look for the obligations of a mortgage in the act itself; to extend them beyond the plain terms of the act, on evidence such as that here suggested, would be to create a mortgage by parol or by implication, in violation of the express provision of the Code, which declares: " A conventional mortgage can only be contracted by an act passed in presence of a notary and two other witnesses, or by an act under private signature. No proof can be admitted of a verbal mortgage."

Defendant never granted, and plaintiffs do not hold, any mortgage to secure anything except "the sum of $2500 for money advanced and acceptances made, and to be made, during the present year."

We have thus solved all the questions in the case except that of

the amount due on the account of plaintiffs, on the 31st day of December, 1887, for which amount they are entitled to a recognition and enforcement of their mortgage, together with interest thereon, at the rate of 5 per cent. from the 31st day of December, 1887, until paid, and for the additional amount of 5 per cent. on the gross amount so due on the mortgage as attorneys' fees.

No balance has ever been struck of the account of plaintiffs, as it stood on the 31st of December, and it requires an accountant to ascertain the exact balance then due, involving a calculation of interest on all the numerous items, labor which can not be thrown on this court.

We shall, therefore, be compelled to remand the case on this point.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and it is now adjudged and decreed that there be judgment in favor of plaintiffs and against the defendant, J. W. O'Bannon, for the sum of $2500.35, with interest at 5 per cent. per annum from April 6, 1890, and costs of suit; and it is further adjudged and decreed that plaintiffs' mortgage herein sued on be recognized and enforced to the extent of the balance due by defendant, as shown by plaintiffs' accounts rendered on the 31st day of December, 1887, together with 5 per cent. interest on said balance from said date, and 5 per cent. attorneys' fees on the amount of principal and interest of said balance, when ascertained. And for the purpose of ascertaining the balance so due on December 31, 1887, the case is remanded to the lower court, with instructions to ascertain the same and render judgment therefor in accordance with this opinion and decree, defendant and appellee to pay costs of appeal.

### ON APPLICATION FOR REHEARING.

FENNER, J. Both parties claim amendment of the decree, and, in exact justice, each is entitled to some relief.

1. The defendant's application claims that the accounts rendered by plaintiffs on April 5, 1889, and April 6, 1890, were not acknowledged. This is not correct as to the first point, no objection to which was urged until March, 1890, after it had been acquiesced in by prior correspondence. But it is correct as to the final account of 1890, and we think the charges, made therein, of 8 per cent. interest, and 2½ for advancing on balance of former account of April

5, 1889, should be reduced to 5 per cent. interest. This reduces the amount due on account sued on to $2382 61, and we shall amend the judgment accordingly. The commissions charged on cotton not shipped were proper, under the agreement and dealings of the parties, and other objections of defendant have no merit.

2. The application of plaintiffs demonstrates beyond question that the balance due on December 1, 1887, as shown by account rendered and acknowledged, considerably exceeded $2500, the amount of the mortgage stipulated. Therefore, the mortgage vested to the entire amount, and there was no necessity for remanding the case to ascertain a fact patent on the record.

It is, therefore, now ordered and decreed that our former decree herein be amended by reducing the principal of the judgment against defendant from $2500.35 to $2382.61; and further, by recognizing and enforcing the mortgage of plaintiff on the property described therein, for the full amount of this judgment, together with 5 per cent. attorneys' fees on the principal and interest thereof, and by cancelling that part of the decree which remands the case. And that, as thus amended, the said decree be maintained.