No. 4172

Second Circuit

(Second Division)

———

PELICAN WELL, TOOL & SUPPLY CO.
v. SABINE STATE BANK & TRUST CO.

———

(December 9, 1931.   Opinion and Decree.)

———

Charles B. Emery, of Shreveport, attorney for plaintiff, appellant.

Ponder & Ponder, of Many, attorneys for defendant, appellee.

CULPEPPER, J. In this action plaintiff seeks to have restored to its deposit account with defendant bank the sum of $155, being the aggregate of two checks which plaintiff alleges were drawn against said account without authority by a sales manager of plaintiff's branch store at Zwolle, Sabine parish, and honored by defendant without authority from plaintiff. From a judgment rejecting plaintiff's demands, it has appealed.

The plaintiff corporation, domiciled in the city of Shreveport, Caddo parish, engaged in sale of oil well supplies, opened a branch store in Zwolle, Sabine parish, some time in March, 1930. Its secretary-treasurer, T. D. Sedbury, together with one J. E. Webb, whom plaintiff had employed as sales manager of the branch store, went to the defendant bank in Zwolle, and opened up an account for the deposit of funds derived from its business. Sedbury testified that on that occasion he made arrangements with the bank to accept checks for deposit as a convenience to his business, but left no authority with the bank to any one to withdraw the funds; that he gave no authority to Webb, his sales manager, to withdraw any of the funds, but did authorize him to receive checks in the conduct of the business, and to indorse same for deposit to plaintiff's account at the bank. He testified that he did not inform the bank or instruct it as to who would or would not have authority, to withdraw the funds; that no mention was made to the bank regarding withdrawals of funds. The testimony does not show who the person in charge of the bank was at the time the account was opened, nor with what bank official Mr. Sedbury made his arrangements. He merely says he made the arrangements "with the bank." It is shown by the testimony that the official in charge of the bank at the time was not the one who was in charge at the time of the trial, and who testified for the bank. Whoever the official was in charge when the account was opened did not appear to testify, and his name was not disclosed.

The account as carried on the defendant bank's ledger was "Pelican Well Tool Company, by J. E. Webb," and the monthly statements mailed out to plaintiff were headed, "Pelican Well & Tool Supply Co., J. E. Webb, Mgr."

On July 9, 1930, J. E. Webb drew a check upon defendant bank payable to cash for $50 signed it, "Pelican Well & Tool S. Co., J. E. Webb," presented same to the bank for payment, and received the cash on it. On the following day, July 10th, he drew another check, similarly signed,

for $105, presented it to the bank, and received the cash. The bank charged these two amounts to the account of plaintiff. Webb evidently appropriated this money to his own use, as no part of same was used for the benefit of plaintiff's business. Webb was discharged by plaintiff on July 15th following, and left and went to Texas, where he was still supposed to be residing at the time of the trial.

On July 15th, following the honoring of the two checks, defendant bank prepared and mailed to plaintiff a statement covering the period from July 1st to the 15th, inclosing the two canceled checks. No other or additional withdrawals of the funds are shown on the statement.

Mr. Sedbury testified that these two checks were the only withdrawals Webb had ever made from plaintiff's funds in the bank. Mr. Horace Thompkins, manager in charge of defendant bank since May 15, 1930, testifying from defendant's ledger sheet filed in evidence showing plaintiff's account from its inception, stated that three debit items, one on June 20, 1930, for $75, and the other two representing the two checks in question, were withdrawals by Webb.

Both Sedbury and Thompkins, however, upon cross-examination, testified that they could be mistaken, and were not sure whether this $75 was withdrawn by Webb or not. Mr. Thompkins testified that Webb on many occasions indorsed the Pelican Well, Tool & Supply Company's name, per J. E. Webb, on checks and got cash on them, but could not remember or say that they were checks drawn against plaintiff's account, as they might have been checks given by customers on other banks and payable to plaintiff. Mr. Thompkins also testified that Webb held himself out as manager, and was in fact, so witness understood, the manager of plaintiff's branch store at Zwolle. Thompkins admits that the bank had no written or other special authority to cash checks issued by Webb against the account of plaintiff.

The pertinent facts, as shown by the testimony are, that plaintiff's account was opened with defendant bank primarily as a depositary of plaintiff's receipts of moneys and checks from its branch business at Zwolle. No written authority or special instructions of any kind were given to the bank as to who would check out or withdraw any of the funds. When the deposits reached as much as $1,000, Sedbury says he would withdraw same himself. The business carried on by plaintiff at this place was not one that required paying out by the manager of the funds, except to a very limited extent. The paying of the clerk's hire, rents, taxes, etc., was doubtless done by plaintiff from its main office in Shreveport. Plaintiff's testimony, therefore, that Webb was given authority to indorse checks for deposit only, is not inconsistent with what would naturally be expected under the circumstances.

We cannot conceive of a bank's accepting and opening up an account, and receiving deposits, and not providing itself with some written or other special authority from the depositor as to who, if any one, should withdraw the funds other than the depositor himself. Yet that is what was done in this case. Because Webb came and deposited plaintiff's funds in the defendant bank and indorsed his employer's name upon checks taken in trade in order to clear them through the bank did not signify that he had authority from his superior to check out or withdraw the funds, even though he was the manager of the business. Webb must have had express and special authority from his employer,

and such communicated to the bank with instructions to be governed thereby. Civ. Code, arts. 2996, 2997.

The burden was upon defendant to show such authority in Webb and that defendant had been authorized and instructed to act upon it. McCarty v. Straus & Baer, 21 La. Ann. 592; Spies v. Caruso, 1 La. App. 544; Barriere & Co. v. Fortier, 23 La. Ann. 274.

Webb, was nothing more than plaintiff's employee, and plaintiff cannot be bound by the issuance of checks and withdrawals of its funds from defendant bank by its employee without express authority, either written or unequivocally given by plaintiff. Lafourche Transportation Co. v. Pugh, 52 La. Ann. 1517, 27 So. 958.

Defendant bank could not infer that Webb had the authority to withdraw the funds of plaintiff just because he made the deposits for plaintiff. Morse on Banks & Banking, sec. 433.

The fact that defendant was dealing with plaintiff's agent was sufficient to put defendant on its guard and convey to it knowledge that some definite and express understanding should be had with plaintiff for Webb to withdraw these funds. Chaffe v. Stubbs, 37 La. Ann. 656; 2 C. J., Agency, secs. 204, 210.

Immediately upon receipt by plaintiff of a statement from defendant with the canceled checks, plaintiff wrote defendant repudiating the acts of Webb and demanding reinstatements of the amounts withdrawn to plaintiff's account. Plaintiff, we think, was not estopped from claiming restitution. It is not shown that any previous withdrawals had been made by Webb of any of these funds. An attempt was made to show a previous withdrawal of $75, but failed. Even if such had been the case, we seriously doubt that it would estop

plaintiff from now claiming restitution of the withdrawals here involved, especially since it has been shown that Webb never had any authority to make withdrawals. Graham v. Southington Bank & Trust Co., 99 Conn. 494, 121 A. 812; 2 C. J., 1129, par. 131; National Dredging Co. v. Farmer's Bank, 6 Pennewill (Del.) 580, 69 A. 607, 16 L. R. A. (N. S.) 593, 130 Am. St. Rep. 158.

The relationship of a bank and a depositor is that of debtor and creditor, when the deposit is money or things consumable. Civ. Code, art. 2941. The bank has the right to use the deposit, and, in consideration thereof, covenants to pay it out only as directed by the depositor. It imposes the duty upon the depositor to deal with the bank direct and truthful. The violation of this duty in creating a state of things which would not have existed but for his indiscretion will alone defeat him. Smith v. Mechanics' & Traders' Bank, 6 La. Ann. 610. We fail to see wherein plaintiff has violated any duty it owed to defendant. If plaintiff had in mind keeping its funds on deposit until some future time when it should withdraw them itself, we see no reason why it should have to so advise defendant and instruct defendant not to permit J. E. Webb, or any one else, to withdraw them. It was defendant's duty to hold these funds until such time as plaintiff should authorize defendant to permit Webb to withdraw same, regardless of whether Webb was the manager of plaintiff's business or was a total stranger.

In Vanbibber & Co. v. Bank of Louisiana, 14 La. Ann. 481, 74 Am. Dec. 442, plaintiff's collector received a check on a collection from a debtor of plaintiff's, forged plaintiff's indorsement thereon, and cashed it at defendant bank. Plaintiff sued to recover the amount. The court, in discussing the rights of a depositor, said:

"A depositor in a bank has the right to suppose that the bank will only pay out his money upon his own signature or that of his agent, and upon the conditions specified in the check."

Likewise:

"The party receiving a check drawn by a depositor is actuated by this confidence and belief, and takes a check with the understanding that it shall be paid only to his order, or as specified in the check."

As in the above case, no negligence was shown on the part of plaintiff, but that the defendant bank was held to have been negligent, and so it is in the present case. The court there cites article 2966 of the Code (now article 2997) to the point that the power to indorse bills of exchange on promissory notes must be express and special. In that case defendant contended that a check is not a bill of exchange. The court said:

"It is true that bills of exchange differ, in many important particulars, from checks; yet, even without this Article, the collector would not have been empowered to have endorsed the check for plaintiffs, without showing that it was within the scope of his agency as collector; otherwise, no one would be safe from ruin."

We think the same reasoning applies to the present case. To allow a manager or some other employee of the many mercantile and other business establishments in the country to withdraw its funds from the bank in which they are deposited, merely because such person might be the manager and the person who made the deposits, could, we think, easily result in serious loss to such a business.

A bank's interest and concern regarding withdrawals of deposits made in the name of a corporation or a partnership is not so much as to who does not have authority as it is to who does have authority to issue checks against the account. In other words, the authority and right to sign checks for another must have been affirmatively proven to the bank before it would be justified in honoring such checks.

For the foregoing reasons, the judgment of the lower court is reversed and set aside, and it is now decreed that there be judgment in favor of the plaintiff, Pelican Well, Tool & Supply Company, Inc., and against the defendant, Sabine State Bank & Trust Company, in the sum of $155, as prayed for, with legal interest thereon from July 10, 1930, until paid; defendant to pay all costs.