ELLIS, Judge.
On April 4, 1962 the plaintiff, Kenneth E. Lewis, entered into a $19,000.00 building contract with Richard V. LeBlanc and/or Regent Homes, Inc. for the construction of a dwelling on property owned by the plaintiff. The building contract provided for three progress payments of $4,000.00' each, and a final payment of $7,000.00 upon completion of the house. As these provisions are important to the decision and a better understanding of the reasons therefore, we quote:
“The first payment of Four thousand ($4,000.00) Dollars when Slab is poured.
“The second payment of Four thousand ($4,000.00) Dollars when Building is weather tight.
“The third payment of Four thousand ($4,000.00) Dollars when Interior walls & ceilings are sealed and all openings are trimmed out. Exterior walls complete.
“The fourth payment of Seven thousand ($7,000.00) Dollars when House is completed & lien Bond furnished to owner.”
In order to obtain the initial $12,000.00 to meet the three progress payments, and at the suggestion of Richard V. LeBlanc, the plaintiff authorized LeBlanc to secure the interim financing through the Livingston State Bank. Plaintiff left all details with regard to the financing to LeBlanc and at no time discussed the matter with any representative of the Livingston Bank. LeBlanc had full authority to arrange the interim financing so that the three $4,000.00 payments could be made to LeBlanc and/or Regent Homes, Inc. in accordance with contract provisions. Accordingly, on October 18, 1962 the plaintiff and his wife executed a collateral mortgage and note in the amount of $12,000.00. The mortgage and note were prepared by Troye A. Svendson, Notary Public of the Parish of East Baton Rouge, after personal discussion with plaintiff. The note was made payable to “MYSELF” and was endorsed in blank by the plaintiff. The mortgage provided:
“Said note is herewith executed, issued and delivered and this mortgage is given to secure advances to be made in the future * * *
In this proceeding the plaintiff-mortgagor sought a judgment ordering the cancellation of the mortgage on the ground that the mortgage was granted “in anticipation of securing certain advances but no such advances were received by (plaintiff) or credited to his account, and that because of the failure of consideration and in order to clear the title to the aforementioned property the said mortgage should be erased and the note returned to (plaintiff.)”
The case was tried and the learned District Judge denied plaintiff the relief sought and dismissed his suit and he has appealed. As work progressed on the house, the Livingston State Bank made progress payments provided in the contract, which had been furnished to it prior to the execution *629 of the loan direct to Regent Homes, Inc. by making three deposits of $4,000.00 each to the Regent Homes, Inc. account. After the third payment, work on the house stopped. Several material and labor liens were filed against the plaintiff’s property totalling approximately $11,700.00. Mr. LeBlanc evidently finding other environs more to his taste, departed without leaving a forwarding address and was unavailable at the time of the trial.
The gravamen of plaintiff’s suit is that as the payments were made direct to Regent Homes, Inc. without his authority, he never received any money from the bank under the collateral mortgage and cannot be held responsible for failure of consideration. It is admitted the defendant bank did not secure any hand note or other receipt from Lewis for any of the $12,-000.00 paid.
In support of plaintiff’s contention of failure of consideration, counsel cites the following Articles of our LSA-Civil Code:
“Art. 3290. The conventional mortgage is a contract, by which a person binds the whole of his property, or a portion of it only, in favor of another, to secure the execution of some engagement, but without divesting himself of the possession.
“Art. 3292. A mortgage may be given for an obligation which has not yet risen into existence; as when a man grants a mortgage by way of security for endorsements, which another promises to make for him.
“Art. 3293. But the right of mortgage, in this case, shall only be realized in so far as the promise shall be carried into effect by the person making it. The fulfillment of the promise, however, shall impart to the mortgage a retrospective effect to the time of the contract.”
For the same proposition he cites the case of Morris v. Cain’s Executors, 39 La.Ann. 712, 1 So. 797:
“Though the Code authorizes a mortgage to secure an obligation which has not yet arisen into existence, in such case the mortgage can be enforced only in so far as the future obligation shall have been created.”
Counsel further states in his brief:
“Applying the clear meaning of this provision, there can be little doubt but that there was no consideration for the note and mortgage in question here. The note is signed and endorsed by Kenneth E. Lewis. The mortgage is signed by Kenneth E. Lewis and his property is encumbered. There is no mention in the mortgage of the name Regent Homes, Inc., or of Richard V. LeBlanc.
“However, the promise to lend TWELVE THOUSAND AND NO/100 ($12,000.00) DOLLARS to Mr. Lewis was not carried into effect. Mr. Lewis never saw any of this money nor did he authorize anyone else to see the money. He signed no check, note, letter or other semblance of authority for the bank to release the funds. This is the record as testified to by both the bank and mover.
“To hold Mr. Lewis responsible for this money and to accept respondent’s argument that the payment by the Livingston State Bank to the contractor constituted payment to Mr. Lewis would be extending the mortgage by implication to make the mortgage an obligation to pay the indebtedness of the contractor. Our Courts have consistently held otherwise. (Flower v. O’Bannon, 43 La.Ann. 1042, 10 So. 376; D’Meza v. Generes, 22 La.Ann. 285; Walmsley v. Resweber, [105 La. 522], 30 So. 5, 12) and it becomes a legal maxim that mortgages are stricti juris. (State of Louisiana v. Atlas Pipeline Corporation [D.C.], 33 F.Supp. 160; Blappert v. Succession of Welsch, 192 La. 173, 187 So. 281.
*630 “This matter was succinctly put by our Supreme Court in the Walmsley case (Supra) wherein it was stated:
“To stretch the mortgage in this way to make it cover a debt clearly not within the contemplation of the parties at the execution of their mortgage act is to go dead counter to the principle that mortgages are stricti juris, and must be construed restrictively, and not expansively. Flower v. O’Bannon, 43 La.Ann. 1047, 10 South. 376. That a mortgage given to secure a particular future debt cannot be shifted to another and a different debt is a plain proposition.”
“However, in their brief in the lower court, the banks argued that it was clear that Mr. Lewis intended the Bank to make certain advances. This argument was based on Mr. Lewis’ statement to the effect that he knew that the bank was supposed to make payments under the contract. Mr. Lewis does not deny this. He does deny that he authorized the bank to pay the money directly to the contractor * * *».
We certainly have no quarrel with the authorities cited by counsel for plaintiff and particularly that the right of mortgage in such a case “ * * * shall only be realized insofar as the promise shall be carried into effect by the person making it.” We differ, though, in the interpretation of the facts of this case. We believe that factually the record shows the promise made by the Livingston State Bank was carried into effect when the bank made the three payments set forth in the contract between the plaintiff and LeBlanc and/or Regent Homes, Inc. in strict accordance with the conditions under which such payments were to be made and when to be made, and as corroborated by the provision in the mortgage that the sum of $12,000.00 was to secure future advances. There can be no interpretation other than that the $12,000.00 referred to the three $4,000.00 payments set forth in the contract. The plaintff had no personal contact with the Livingston State Bank but entrusted all details to LeBlanc as his agent and/or representative to carry out the terms of the contract which Le-Blanc delivered to the bank when he secured the bank’s consent to finance the Lewis’ future three payments as set forth in the contract. He made no restrictions on the payment of this money and it is clear from the testimony that LeBlanc secured the loan for plaintiff with his full consent, to be paid by the Livingston State Bank strictly in accordance with the terms, of the written contract. The mortgage must be interpreted along with the contract and the fact that LeBlanc was the agent and representative of the plaintiff who executed the mortgage and note without any restriction after LeBlanc had notified him that the Livingston State Bank would loan the money to take care of the three $4,000.00 payments. There is nothing in the record to show that the bank was to deposit this money to the account of the plaintiff, but, on the contrary, the proof preponderates that they were only to pay under the conditions and at the time set forth in the written contract between the plaintiff and LeBlanc and/or Regent Homes, Inc. We cannot agree that the plaintiff did not authorize anyone else to “see the money”. Plaintiff does not testify to any restriction on LeBlanc’s authority to secure this money in accordance with the contract from the Livingston State Bank. Under the facts the plaintiff got full consideration for the $12,-000.00 which was paid on his behalf as provided in his contract. The plaintiff knew the money was supposed to be paid, and allowed it to be paid by his silence. He could have provided for protection in his contract or attended to the borrowing of the money personally and made restrictions which would have protected him.
Counsel argues that the plaintiff denies he authorized the bank to pay the money *631 directly to the contractor. We believe that is exactly what he did when he made Le-Blanc his agent to borrow this money for the purpose set forth in the written contract between the parties at the time and which contained specific provisions as to when the $4,000.00 was to be paid and to whom, and LeBlanc not only had his signed copy of the contract but delivered it to the bank, and requested the money for the plaintiff in accordance with and for the purpose set forth in the contract.
Counsel for plaintiff in his brief makes •.the further argument:
“Further, the case of Penn vs. Burk [La.App.], 145 So.2d 106, relied upon by the lower court in its reasons for judgment is readily distinguishable from the case at bar. In the case, the plaintiff’s wife testified that both she .and the plaintiff understood and agreed that the lender was to pay the contractor for repairing the house. Thus, while it appears that the lender received credit for payments made to the contractor, it was only because of the borrower’s consent. This is a far case from the one at bar where there was absolutely no agreement, but a complete lack of contact between the parties.”
We believe the case of Penn v. Burk, supra, is on all fours with the case at bar. We thoroughly disagree that there was absolutely no agreement in this case between the plaintiff and the bank and a complete lack of contact between the parties. The contact between the plaintiff .and the bank was as complete when made by LeBlanc on behalf of the plaintiff as 'his authorized agent as if the plaintiff had personally made the contact, and there was an agreement between the plaintiff and the bank through LeBlanc that the money was to be loaned and the mortgage given to secure future advance of $12,-000.00 to the plaintiff to be paid in accordance with the contract terms between the plaintiff and LeBlanc and/or Regent Homes, Inc. of Baton Rouge to the Regent Homes, Inc. in three equal installments of $4,000.00, the first when “Slab is poured”, the second, when “Building is weather tight,”, and the third, when “Interior walls and ceilings are sealed and all openings are trimmed out. Exterior walls complete.” Therefore, the contract called for $4,000.00 payments when a specified progress had been made in the building of the house. That was the plaintiff’s agreement with the bank as made by his authorized agent and if he wanted it differently he should have instructed his agent and notified the bank or made the agreement personally with the bank. He does not contend that LeBlanc exceeded his authority or violated the conditions under which the money was borrowed.
The plaintiff admits that the house was three-fourths complete and it is also shown by the bank that all the conditions for the payment of the installments were met prior to such payment and there is no denial by the plaintiff of this fact. Plaintiff personally saw the building progress, knew the conditions for the three payments as shown by contract had been completed. There would never have been a complaint made had not LeBlanc violated the confidence which the plaintiff evidently placed in him, for he remained silent during the whole time it took to build the house to the extent that it satisfied the condition for the third payment of $4,000.00, and evidently made no inquiry nor took any steps to satisfy himself that LeBlanc was not doing what he expected him to do. There is nothing in the contract providing for any restrictions on payment of the $12,000.00 other than specifically stated, supra, and all of these provisions were fully met and satisfied prior to payment by the bank. We are therefore of the opinion that the plaintiff received the full consideration his contract called for, and, as stated, we believe the note and mortgage must be construed in accordance *632 with the terms of the contract as furnished to the bank by plaintiff’s authorized agent.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.
HERGET, J., dissents with written -reasons.