187 So.2d 784 (1966)
James M. BOLLINGER, Jr., Plaintiff-Appellant,
v.
LIVINGSTON STATE BANK AND TRUST COMPANY, Defendant-Appellee.
No. 6700.
Court of Appeal of Louisiana, First Circuit.
June 13, 1966.
*785 George R. Covert, Baton Rouge, for appellant.
Erlo J. Durbin, Denham Springs, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.[*]
*786 REID, Judge.
Plaintiff, James M. Bollinger, Jr., instituted this proceeding against defendant, Livingston State Bank & Trust Company, seeking the recovery of damages in tort for an alleged improper handling of a collateral mortgage and collateral mortgage note. The facts of this case are, for the most part, not disputed and are practically identical with those in Lewis v. Johnson, La. App., 165 So.2d 627. Indeed, the building contractor and bank who were the real parties at interest in Lewis are the same here. Only the plaintiff and a few insignificant facts are changed.
LeBlanc entered into a standard building contract with plaintiff, agreeing to construct a certain dwelling for $16,900.00. The contract called for three progress payments of $4,000.00 each at specified points in the construction and one final payment of $4,900.00 upon final completion, acceptance, approval and furnishing a lien bond to Capital Building and Loan Association,
A $12,000.00 commitment had been obtained from Capital and interim financing in that amount had been obtained from the bank. As in the Lewis case, supra, all negotiations were handled by LeBlanc on behalf of plaintiff.
The collateral mortgage note to secure interim financing for the new Bollinger home was executed by plaintiff and payable, at the office of the bank, to "Himself" and by him endorsed. The note was also endorsed by LeBlanc, the contractor, but this was evidently done without the knowledge or consent of plaintiff or the attorney who prepared the mortgage and prior to delivery of the note to the bank by LeBlanc.
The house was actually completed and plaintiff moved into it. It was shortly after this that plaintiff learned that his contractor had failed to pay $2,452.82 in labor and material charges. Liens were filed and plaintiff ultimately paid that amount plus $566.28 interest on the $12,000.00. These two amounts, plus $7,500.00 for inconvenience, humiliation and mental suffering, are claimed as the measure of damages.
As in the Lewis case, the progress payments were made after inspection of the work by agents of the bank to assure compliance with the specifications and that the required quantity of work had been performed to entitle the contractor to a progress payment. At the appropriate times the payments were made direct to the contractor by the bank, without notice to the plaintiff and without receiving from him any hand note, receipt, or authorization of any kind. Nevertheless, plaintiff admitted he knew the payments were supposed to be made as the work progressed and assumed that they had been made, as indeed they had.
In the Lewis case, Lewis sought cancellation of the collateral mortgage under facts not materially different from those recited above. The cause of action on which he relied was that the bank had never made any advances under the note and that, consequently, there had been a complete failure of consideration. Bollinger, plaintiff in the instant case, seeks recovery of damages, alleging his injury resulted from improper payments to LeBlanc, that is, payments made direct to LeBlanc rather than through plaintiff.
The lower court dismissed plaintiff's suit and plaintiff has appealed.
It is elementary that in order to recover damages in this case plaintiff bears the burden of pointing out a contractual or fiduciary duty on the part of the defendant, of proving a breach of that duty, of showing that the breach of duty complained of was a proximate cause of the injury, and that the injury actually was suffered and is compensable. In disposing *787 of this case it will be helpful to relate the arguments of both sides to the broad framework.
Unquestionably, the bank owed plaintiff a duty in this case. The legal relations existing between plaintiff and the bank were created by the delivery of the collateral mortgage note and building contract to the bank and by the bank's undertaking to advance money and supervise construction as to quality and quantity as the agent of plaintiff. The duty which the bank owed to plaintiff was that of a fiduciary and agent, for this is the nature of the relationship created between them.
Certainly such a duty contemplates an exercise of the highest standards of honesty, integrity and performance but with reference to what activity on the part of the fiduciary? The answer to that poses the real difficulty in this case. Certainly the proper discharge of some activities is required of the bank as a matter of law. Other undertakings would be imposed on the bank by virtue of an agreement, either actual or implied, between itself and the plaintiff. Still others might be undertaken voluntarily for its own protection or for the protection and/or accommodation of the plaintiff. In all of these various types of activities or undertakings the bank owes plaintiff the highest standards of honesty, fair dealing and performance.
In the instant case, an implied agreement between plaintiff and the bank, negotiated by LeBlanc who was acting on behalf of plaintiff, obligated the bank to advance $12,000.00 in progress payments. In addition, the bank, for its own protection as well as for the protection of the plaintiff, undertook to conduct inspections to insure proper quality and progress of the work. None of these undertakings are required by law, but were contractual in nature and present in this case.
Plaintiff contends that his injury was caused in part by the bank's failure to secure a performance bond. The law does not impose on a lending institution an obligation to require such a bond, nor the obligation to secure it if one is required as a condition precedent to making a commitment to loan money. There is nothing to prevent the bank, however, from undertaking, pursuant to an actual or implied agreement between the parties, or voluntarily for its own and plaintiff's protection, to secure a performance or a lien bond. The same is true with reference to ascertaining whether or not the bills are being paid as the work progresses.
In the instant case plaintiff alleges that the bank did undertake to secure a lien bond and misled him into believing that Mr. Smith, a member of the Board of Directors of the Bank, was going to sign it. If this is true, then certainly the securing of the bond would be within that class of activities to which the fiduciary duty attached and a failure to perform that activity would constitute a breach of that duty.
The plaintiff's evidence on this point is unconvincing, however. Mrs. Yvonne Lafleur, an employee with long experience with the Capital Building and Loan Association, testified that she was led to believe by someone at the bank that Mr. Smith would sign the surety bond. Mr. Jack Odom, an officer of the bank, denies undertaking to have the bond furnished but did assure Mrs. Lafleur that Mr. Smith could be counted on to sign the bond, if he said he would. Mrs. Lafleur was to prepare the bond which, under the building contract, was due any time before the final payment of $4,900.00. Mrs. Bollinger admitted on cross examination that she and her husband were aware before the contract was signed that LeBlanc could not furnish a performance bond but that she thought they were secure in a lien bond which Smith would sign. From this evidence we cannot find any justification for reversing the trial judge on the facts and must conclude that the bank never did impliedly undertake to secure a lien or a performance bond.
*788 Plaintiff also contends that as a matter of law, and also by specific direction of plaintiff through his wife, the bank was bound to make advances under the collateral mortgage note only to him in the absence of written authority to the contrary. Plaintiff relies on Pelican Well, Tool and Supply Co. v. Sabine State Bank & Trust Co., 18 La.App. 590, 138 So. 161.
It cannot be denied that law imposes an obligation on the bank in this case to make payments under the Bollinger note only for the account of Bollinger. No third parties would have a right to any of the advances. However, this does not mean that the payment must, in fact, go direct to Bollinger, who would then be required to pay it over to his contractor. That is a matter of mechanics which could be handled in a number of ways.
The bank knew of the valid and binding contract between LeBlanc and Bollinger and was in possession of a copy of it. It was certainly contemplated by everyone that the $12,000.00 be used to meet plaintiff's obligations under that contract. For this reason, the doctrine of Walmsley v. Resweber, 105 La. 522, 30 So. 5, that mortgages given to secure a future debt cannot be shifted to a different debt, has not been violated. For the same reason, the provisions of R.S. 7:87 were not violated. It is true that payment to the mortgagor would have been a better business practice. Payment to any third person in the absence of written authority was certainly at the risk of the bank. However, payment for the account of the mortgagor of the debt contemplated upon execution of the mortgage to the party entitled to receive the money, with the knowledge of the mortgagor, cannot be held to be contrary to any duty imposed by law.
The Pelican case, supra, is not controlling under the facts of this case. In the Pelican case, funds in a corporate checking account were withdrawn by an employee of the corporation without authority and appropriated to his own use. In the instant case all of the parties contemplated that advances would be made to the contractor as work progressed. This is exactly what was done. Certainly the bank acted at its own risk but having acted at its own risk in the manner contemplated and approved by Bollinger at the time, Bollinger cannot now be heard to complain of the lack of written authority.
This duty of direct payment to the mortgagor could, of course, be created by agreement between the parties, or even by the unequivocal unilateral demand of mortgagor, for the bank is acting in an agency capacity. The money is the plaintiff's and he should have the right to demand receipt of it, if only momentarily.
Plaintiff in the instant case alleges that such instructions were given to the bank. The evidence on this point is unconvincing and consists only of the testimony of Mrs. Bollinger that she did request this of Mr. Jack Odom, an officer of the bank, on the occasions of several telephone conversations. This was denied by Mr. Odom. His testimony was evidently accepted by the trial judge and we cannot find that his decision in that regard is fraudulent, grossly erroneous, arbitrary, capricious, or not based on substantial evidence. On the contrary, such a request from Mrs. Bollinger appears to have been unlikely during construction for during that period there was no reason to suspect that anything was wrong. It was not until the house was completed and occupied that the unpaid laborers and materialmen began to assert their claims and protect them by filing liens.
Consequently, no duty arose in the instant case for the bank to make advances direct to the mortgagor. Since this is the only breach complained of by plaintiff, it is sufficient to point out that there can be no breach of a non-existent duty.
A second, equally cogent, ground exists for affirming the lower court. If we were persuaded that law or the facts at bar imposed *789 a duty on the bank to make the progress payments direct to plaintiff, and found a breach as we would certainly have to in that event, we would be convinced that the breach of duty was not the proximate cause of the injury suffered by plaintiff. Plaintiff admitted that $3,000.00 of the $4,900.00 final payment contemplated by the contract had actually been paid before execution of the contract and prior to the commencement of work on the house. The remaining $1,900.00 was paid at various other times during construction but prior to completion and acceptance of the work. Therefore, at or about the time the work had progressed through the third inspection, ("interior walls and ceilings are sealed and all openings are trimmed out ready for painting. Exterior walls complete") the contractor had the whole $16,900.00 rather than the $12,000.00 as contemplated under the contract. The conclusion is, therefore, inescapable that the proximate cause of the injury to plaintiff was not the direct payment by the bank to the contractor, but the prepayment of $4,900.00 by Bollinger to the contractor before acceptance and before the lien bond was secured.
Plaintiff contends that had the advances been made direct to him he would have checked with laborers and materialmen, whose identity was known to him, to insure that they were being paid. Plaintiff cannot explain, however, why he did not make such an investigation in any event. Even though advances were not made direct to him, there was nothing to prevent him at any time from making this investigation which would have disclosed the facts.
The proximate cause of the injury, therefore, is not the bank's direct payment of the contractor, but plaintiff's own prepayment of $4,900.00 and his failure to require a performance bond or ascertain the payment vel non of labor and for material.
For the reason that there can be no recovery in this case, damages need not be discussed.
Affirmed.
NOTES
[*] Due to the death of ELLIS, J., after argument but before rendition, this opinion is handed down unanimously by LOTTINGER, LANDRY, REID and BAILES, JJ.