190 So.2d 504 (1966)
John A. FERNON, d/b/a Fernon's, Plaintiff-Appellant,
v.
CAPITAL BANK & TRUST COMPANY, Defendant-Appellee.
No. 6725.
Court of Appeal of Louisiana, First Circuit.
July 8, 1966.
*505 William Carl Roberts, of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellant.
W. S. McKenzie, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellee.
Before LOTTINGER, LANDRY, REID, BAILES and LEAR, JJ.
BAILES, Judge.
This is an appeal from the judgment of the trial court sustaining an exception of no cause of action filed by defendant, Capital Bank & Trust Company, to plaintiff's petition *506 wherein the latter was seeking to recover from defendant bank the total sum of certain checks deposited therein to the credit of Fernon's by the plaintiff's employee and withdrawn from defendant bank by the same employee.
In the consideration of this exception, as did the trial court, we take as true all well pleaded allegations of fact, and by doing so, we find the plaintiff, doing business as Fernon's is engaged in the business of selling and servicing photo-copy machines and supplies. His principal office is in Beaumont, Texas, with branch offices in Lake Charles, Lafayette, and Baton Rouge. The Baton Rouge office was under the management of a man named James C. Pinegar. Plaintiff alleges between August 8, 1960 and September 27, 1961, defendant cashed checks made payable to the order of Fernon's totaling $8,132.42, and that after cashing these checks Pinegar, without authority or knowledge of plaintiff, deposited the amounts thereof, on certain dates between the aforementioned dates, to the credit of an account in the name of Fernon's in defendant bank; and that between August 10, 1960 and October 6, 1961, defendant bank permitted Pinegar to make withdrawals therefrom totaling $8,102.71, which was the amount of his alleged damage, and that he first learned of defendant's action on October 8, 1961.
As plaintiff's action is grounded in tort and based on certain alleged negligent acts, we quote the following allegations of his petition:

"9.
"Petitioner shows that at all times mentioned herein defendants knew or should have known that Fernon's had its principal office in Beaumont, Texas, and did all of its banking through banks located at and in Beaumont, Texas, but defendants never at any time made any investigation to determine the authority of anyone to cash checks made payable to the order of `Fenon's', but accepted the forged endorsements on said set of checks, all as set forth above, and defendants failed to make any determination of the authority and right of James C. Pinegar to open a bank account in the name of `Fernon's', and failed to make any investigation to determine the authority of James C. Pinegar to thereafter draw on said account by issuing checks in the name of `Fernon's'; petitioner shows that a cursory examination in accordance with the custom and practices of the banking business would readily have revealed that said signatures on all checks cashed were forgeries, and that the said James C. Pinegar had no authority to open a bank account in the name of `Fernon's', and that the said James C. Pinegar had no authority to make withdrawals from said account in the name of `Fernon's', in accepting an unauthorized bank account in the name of `Fernon's' and in accepting withdrawals from said bank accounts in the name of `Fernon's', defendant was grossly negligent."
Plaintiff prayed for judgment against defendant in the amount of $8,102.71, together with legal interest from date of judicial demand.
Defendant's exception of no cause of action is based on the premise that the payee of a check cashed through the means of a forged endorsement has no cause of action against either the collecting bank or the drawee bank, citing M. Feitel House Wrecking Co. v. Citizens' Bank and Trust Company, et al. (1925) 159 La. 752, 106 So. 292.
In complaining of the decision of the trial court sustaining the defendant's peremptory exception and dismissing his action, plaintiff assigns two errors. These are:
"1. The Court erred in determining that the Negotiable Instrument Law of Louisiana stated in LSA-R.S. 7:1-7:195 is applicable to the facts under consideration rather than the general law of negligence.
*507 "2. The Court also erred in determining that the endorsing of the checks were indeed a forgery."
In arguing his first assigned error, plaintiff states his petition is based on the general law of negligence and does not involve the payee's "legal" right to recover against the drawee bank. He states that his case is simply that of an unauthorized opening of a checking account and unauthorized withdrawal therefrom by an unauthorized signature thereto. Plaintiff contends defendant was negligent in permitting Pinegar to endorse checks payable to Fernon's and deposit the proceeds thereof to the account of Fernon's without determining the authority of Pinegar to do so, and then permitting him to withdraw the funds without determining his authority for such acts. He relies on the case of Pelican Well, Tool & Supply Company v. Sabine State Bank & Trust Company (1931), 18 La.App. 590, 138 So. 161, as authority for holding defendant liable.
In the instant case, the facts are Mr. Pinegar endorsed, without authority of his employer (the plaintiff), the name of the payee on the various checks, and deposited the proceeds of these checks with defendant bank in an account under the name of Fernon's, and then proceeded to withdraw the funds from this account. In the cited case of Pelican Well, Tool & Supply Company v. Sabine State Bank & Trust Company, supra, an officer of the plaintiff corporation, accompanied by an employee, a Mr. Webb, went to the defendant bank and there opened an account for the deposit of certain funds derived from the operation of plaintiff's business. No authority was left with the bank for anyone to withdraw the funds so deposited, however, Webb was authorized to endorse Pelican's checks for deposit in the account. The defendant bank honored two withdrawals by Webb from Pelican's account. The court held the defendant, Sabine State Bank, negligent in paying these two checks drawn by Webb without authority from Pelican.
The plaintiff herein has failed to show any duty owed by the defendant to him in the circumstance which he alleges as the basis for this action. There was no creditor-debtor relationship created between plaintiff and defendant by the deposit of the funds derived from the unauthorized endorsement of these checks. As Pinegar was without authority to cash these checks, the funds derived therefrom were not funds or money of plaintiff. As these funds were not property of plaintiff, plaintiff cannot be heard to complain of defendant bank paying the funds of the Fernon's account to Pinegar. We know of no duty defendant owed to plaintiff under these circumstances. The basis for recovery in tort must be the negligent breach or violation of some duty owed to the person who seeks recovery by the person from whom recovery is sought.
In the Pelican Well case a creditor-debtor relationship existed between plaintiff and defendant, and the court therein found defendant bank guilty of negligence in paying funds to Webb without authority from Pelican Well. The cited case of Pelican Well is inapposite to instant case.
We find the facts of this instant case to be controlled by the decision of the Supreme Court in the case of M. Fietel House Wrecking Company, Inc. v. Citizens' Bank & Trust Co. of Louisiana, et al., supra. In that case the New Orleans & North Eastern Railroad Company drew a draft payable to the order of plaintiff. This draft, payable through Canal Bank & Trust Company, was delivered to the Merchants Railway Traffic Association, Ltd., which was acting as agent for Feitel in the collection of the debt. Merchants Railway Traffic Association endorsed the draft "Merchants Railway Association, Limited, B. E. Slawter, Pres., Agent and Attorney in fact for M. Feitel Housewrecking Co.", and deposited the draft for collection to its account in the Citizens' Bank & Trust Company. The *508 plaintiff knew nothing of the fact that the draft had been issued, or that it had been endorsed and collected by the association until several months afterwards. Upon learning of what had transpired, it immediately repudiated the action of the association in endorsing and collecting the draft and so notified the Citizens Bank and the Canal Bank. In its petition, plaintiff claims the action of the defendants had caused it to sustain a loss of $317.25, the amount of the draft, and sought judgment in that amount against both banks as defendants. The court therein held that in the absence of an acceptance or certification by the drawee bank there was no assignment of any part of the funds of the drawer in the bank, and there was no privity between the bank and the holder, and therefore the holder, Feitel, had no cause of action against the bank.
Particularly pertinent to the instant case is what the court said in this Feitel case. The Supreme Court, in part, stated:
"[5, 6] Nor do we think that the allegations of the petition that the Citizens' Bank was negligent in guaranteeing the indorsement of plaintiff by the traffic association without first ascertaining the authority of that association to indorse plaintiff's name on the check, and that the Canal Bank was negligent in paying the check without ascertaining the authority of plaintiff's agent to indorse the instrument, show a cause of action against either bank for the amount of the check. The only result of such negligence in making the guarantee, as we have said, is to make the Citizens' Bank, which made it, liable to any one acquiring the instrument thereafter, or to make it liable to the drawee in paying the instrument, in the event the indorsement of plaintiff's name thereon did not prove to be genuine or made with authority, and the only result of the negligence of the Canal Bank in paying the instrument, on the faith of plaintiff's indorsement, the indorsement being unauthorized, was to make the supposed payment no payment at all, and to give the bank, as appears from section 23 of the Negotiable Instruments Law, no right to retain the instrument.
"[7, 8] It follows from what we have said that plaintiff's action, if the allegations of his petition be true, is not against either bank for the amount of the check, but, as the check has never in reality been paid, its action for such amount is against the drawer, just as it would have been had the bank, on a proper indorsement, when the check was first presented, refused to pay it. It also follows that, if plaintiff wishes to recover possession of the check, it may do so, in a proper suit, upon proper allegations, brought against any one having possession of it, but not in this suit in which it does not even appear who has possession of the instrument.
"For the foregoing reasons our conclusion is that plaintiff's petition shows no cause of action against either bank."
In the second assigned error, plaintiff complains of the trial court determining the endorsements were forgeries. We find in plaintiff's petition no less than ten separate allegations designating the endorsements forgeries. Aside from the plaintiff's own allegations of his petition that these endorsements were forgeries, we find it actually makes no difference in the outcome. Whether the endorsements were forgeries or otherwise unauthorized endorsements, the funds derived thereby were not funds of plaintiff. The original obligations for which these checks were given in payment of were not discharged by the drawee banks honoring such endorsements.
For these reasons, we find the trial court was correct in sustaining the exception of no cause of action. The judgment appealed from is affirmed at appellant's costs.
Affirmed.