**Leonard M. ROSS**

v.

**CONTINENTAL MORTGAGE INVESTORS.**

Civ. A. No. 72–2834.

United States District Court,
E. D. Louisiana.

Nov. 4, 1975.

Herschel L. Abbott, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff.

Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for defendant.

## MEMORANDUM AND ORDER

R. BLAKE WEST, District Judge.

The defendant in this action, Continental Mortgage Investors (CMI), was the interim lender on a construction project. Plaintiff, Leonard M. Ross, was a subsequent purchaser of the project who presently seeks damages from CMI. This matter came before the Court on a motion for summary judgment filed by CMI. Thus, this case raises the rather unique issue of an interim finance lender's liability to a sub-

sequent buyer of property and the type of duty, if any, which such a lender owes to the subsequent purchaser. The essential facts are not in contest.

In April, 1971, defendant, CMI, a Massachusetts business trust, entered a loan agreement with Forest & Waterway Corporation (Forest & Waterway) whereby CMI agreed to advance $7,500,000 for use by Forest & Waterway in constructing a 707-unit apartment complex in New Orleans, Louisiana, known as Forest Isle Apartments. This loan was secured by a first lien in the form of a mortgage on the property and improvements. Disbursements were made by CMI to Forest & Waterway pursuant to this loan agreement, and Forest & Waterway controlled the distribution of the funds during construction.

In September, 1971, the promissory note and mortgage of Forest & Waterway was assigned by CMI to Tri-South Mortgage Investors (Tri-South) which made all subsequent advancements of construction funds. Tri-South then *renegotiated* the loan agreement with Forest & Waterway and executed a new agreement in which it undertook to advance $7,800,000, an increase of $300,000 over the original agreement with CMI.

Thus, by early fall of 1971, not only was CMI eliminated from the Forest Isle project, but all vestiges of its mortgage agreement had been completely replaced by a new loan agreement negotiated solely by Tri-South.

Following the renegotiation of the mortgage agreement, Tri-South made several disbursements to Forest & Waterway based on certified draw requests signed by B. J. Case as president of Forest & Waterway. However, during late October and early November, 1971, Tri-South, through its construction inspector, Robert Newbanks, discovered possible cost overruns, that is, the total amount necessary to complete the project in excess of the $7,800,000 loan. Accordingly, Tri-South attempted to secure additional funds from Forest & Waterway to cover these overruns.

Soon after Tri-South renegotiated the loan to finance the complex, Forest & Waterway entered into an agreement to sell the apartment project to FIA, Ltd. (FIA). This purchase was consummated in late December, 1971, more than two months after CMI's total assignment of its rights and departure from the project.

As construction proceeded, funds were alleged to have been diverted by Forest & Waterway. Suffice it to say that by June, 1972, Tri-South had disbursed some $7,300,000 on its $7,800,000 loan and the project was only 50%–60% completed. The estimated cost of completion was then calculated at approximately $12,000,000. Rather than sink any further funds into an already speculative and costly venture, Tri-South chose to foreclose. As a result of Tri-South's foreclosure, FIA lost its expected profit on the purchase. Plaintiff in this case, Leonard Ross, instituted this action as assignee of FIA, seeking to recover the lost profits from CMI.

It is significant that FIA, a California limited partnership, was in no way a novice in the real estate business. FIA was represented in the negotiations by the plaintiff Ross, who, as president of L. M. Ross & Company, Inc., held a general partnership interest in FIA.

· Ross was an attorney and an experienced and knowledgeable investor in real estate developments with numerous real estate interests nationwide. Plaintiff is or was president and chairman of the board of Rossco, Incorporated, Rossco Independent Corporation, Wyndon Corporation, L. M. Ross & Company, Inc., K.A.C. Properties, Inc., and RSC Entertainment Corporation, most of which deal or dealt in transactions in real estate. At the time of the purchase of the Forest Isle Project, plaintiff had dealt with B. M. Grantland and B. J. Case, owners of Forest & Waterway, or their entities, in at least six transactions involving real estate. It is clear that Ross was relatively familiar with the operations of Grantland and Case and had es-

tablished a medial working relationship with them.

FIA purchased the project from Forest & Waterway on its own initiative and without tangible or documented reliance upon CMI. Furthermore, FIA knew of more than $800,000 of cost overruns and diverted funds prior to the consummation of the transaction. overruns were built into the purchase price of the project. FIA's knowledge of the overruns caused it to place some $300,000 in escrow (which amount was later repaid by Tri-South). Despite this knowledge, FIA never even inquired of CMI concerning the status of the project, nor did it rely on any representation of CMI in making the purchase. No contractual relationship ever existed between FIA and CMI and no fiduciary duty was owed by CMI to FIA.

FIA neglected to make its own investigation of the project despite its knowledge that Tri-South had commissioned such an investigation. FIA additionally failed to look at the plans and specifications, failed to look at the books and records, failed to even consider obtaining a performance bond for the completion of construction, and placed full reliance on Forest & Waterway to complete the project. On the basis of prior dealings between plaintiff and Grantland and Case, FIA relied on Case and Grantland regardless of evidence of cost overruns and diverted funds.

The sole involvement of CMI in this project stemmed from its status as an interim financier. CMI had no active role in the supervision of construction of the Forest Isle Apartment Project. CMI never had control of the distribution of funds lent to Forest & Waterway to finance the project, nor did it have any role in letting contracts, choosing subcontractors or controlling construction operations. CMI was not even a permanent lender; it had relatively little interest in the ultimate success of the project except as projections of success affected its status as interim lender. The Forest Isle Project was not monitored directly by CMI. Instead, Mortgage Consultants, an independent firm, monitored the project as advisor to CMI. CMI knew of potential cost overruns on the project, but did not know the extent of cost overruns and had no knowledge of fraudulent diversion of funds by Forest & Waterway. Tri-South approached CMI concerning the assumption by Tri-South of the Forest Isle loan and suggested to CMI that Tri-South assume the loan and renegotiate it with Forest & Waterway. CMI merely agreed to this proposal. The loan was then subsequently renegotiated to $7,800,000, leading CMI to believe that Tri-South knew of cost overruns. CMI was never contacted by plaintiff or FIA when FIA subsequently purchased the project, nor was it ever requested to give any information to either of these parties concerning the project.

Plaintiff, in order to recover in this case would have the Court create a new cause of action not previously recognized in Louisiana. Plaintiff asks that the Court hold an interim financier liable for failure to disclose information about which it had only scant knowledge to one who purchased the land some two months after the interim financier abandoned the project. To follow plaintiff's logic would result in a most unstable lending market. The extent and nature of an interim lender's liability must be clear and without ambiguity and not subject to the whim of a disappointed party.[1]

---

1. Mr. Ross has sought numerous avenues of legal recourse. In addition to this suit, legal proceedings were also commenced against Forest & Waterway, alleging fraud. The Court in that case awarded Ross the liquidated damages but denied him recovery on the issue of fraud. (*Leonard M. Ross v. Forest & Waterway Corporation, et al.*, Docket Number 72-2899, E.D.La.)

■ It is well settled that, under Louisiana law, a lender of funds on a construction project has no liability to any party for cost overruns or diversion of funds by the contractor in the absence of a fiduciary relationship between the lender and the injured party. *D'Aubin v. Mauroner-Craddock, Inc.*, 262 La. 350, 263 So.2d 317 (1972); *Bollinger v. Livingston State Bank and Trust Co.*, 187 So.2d 784 (La.App., 1966). No such fiduciary relationship existed in this case and the absence of such a fiduciary duty between CMI and FIA precludes recovery.

■ Supplementally, an interim lender has no liability for overruns or diversion even to the borrower, unless the lender has assumed actual supervision of the project. (*Bollinger v. Livingston State Bank & Trust Co.*, 187 So.2d 784 [La.App., 1966]).

■ The failure of Ross and FIA, both knowledgeable in the field of real estate transactions, to take such obviously reasonable steps which even a novice purchaser would take to protect his investment does not give plaintiff license to institute suit against whomever he chooses in order to recover his lost profit.[2]

Plaintiff has admittedly attempted to assert an original remedy. To allow recovery against an interim lender by one to whom the lender owes no duty would result in an imposition of liability far beyond that which is right or proper. If the Court were to accept the plaintiff's contention, the floodgates of litigation would be thrown open, and the stability which is so vital to the construction and financial markets would be seriously impaired.

For the foregoing reasons the defendant's motion for summary judgment is granted.

2. It would appear that, while Mr. Ross was sufficiently worried about completion of the project to insert a one million dollar liquidated damages clause in his agreement with Forest & Waterway, he would now have the Court believe that the failure of CMI to inform him of cost overruns caused him to enter into the project. This position is anomalous to say the least and unacceptable to the Court.