No. 3001

Second Circuit
(Second Division)

STEPHENS v. BRACKIN ET AL.

(May 7, 1931. Opinion and Decree.)

Stewart & Stewart, of Minden, attorneys for plaintiff, appellant.

McInnis & Campbell, of Minden, attorneys for defendant, appellee.

STEPHENS, J. This is a suit against V. A. Brackin and the Webster Motors Company, Inc., as maker and indorser, respectively of a promissory note for the sum of $500.

The defendant Brackin made no appearance. The Webster Motors Company, Inc., answered denying generally liability, and specially denying that the indorsement of the note was authorized by the corporation, or that the transaction inured to its benefit.

Judgment was rendered in favor of plaintiff and against Brackin, as prayed for; but plaintiff's demands were rejected as against the Webster Motors Company, Inc.

The plaintiff prosecutes this appeal from the judgment in favor of the motors company.

The case was tried in the lower court by the Honorable Coleman Lindsey of the Minden Bar as special judge. We find in the record a well considered and carefully prepared opinion, in which we think the facts are correctly stated and the issues, and jurisprudence applicable thereto, ably discussed. The reasons assigned by the trial judge warrant the conclusion reached. We adopt his opinion as our own:

"From the testimony adduced on the trial of the case I find the facts to be as follows:

"Brackin applied to plaintiff for a loan of $500, but plaintiff refused to make the loan without security. Later, J. F. Leake, manager of defendant corporation, by whom

Brackin was employed as salesman, came to plaintiff and offered to indorse the note, although it does not appear whether his then intention was to indorse it personally or as manager of defendant corporation. Plaintiff, either having been informed that the indorsement would be that of the corporation, or assuming this to be Leake's intention, went to the Bank of Minden and inquired of Mr. A. B. Hardeman, cashier, whether he (Hardeman) considered the Webster Motors Company's indorsement good for $500 by Mr. Leake as manager. Hardeman informed him that was the way they indcrsed notes, and that he considered the indorsement good. Later, plaintiff took the note described above and delivered his check for $500, payable to 'Cash.' It is not clear as to whether Brackin or Leake received the check, but it appears that Brackin presented it to the bank for payment, although it is not shown which of the two received the money. There is nothing in the testimony to indicate what further disposition was made of these funds except the testimony of Brackin that Leake got all of it. This, however, is contradicted by the testimony of Mr. W. L. Menefee, vice president and director of defendant corporation, to the effect that Brackin told him that he (Brackin) didn't get all of it.

"Leake was not called as a witness. No explanation as to why he was not called was offered by either party, although there is testimony to the effect that he severed his connection with defendant corporation in July, 1926, and other testimony that the affairs of the corporation were left in a bad condition, as well as of a reference to a shake-up and the Leake trouble. Without considering facts known to me outside the trial of the case, I think it but fair to both parties to assume that Mr. Leake was not available as a witness for either party.

"These, together with other facts that will be mentioned later, appear to me to be the pertinent facts brought out on the trial when sifted from the numerous objections and rulings of the court appearing in the note of evidence.

"I have carefully considered the able briefs filed herein, and have made some independent investigations to the best of my ability, being mindful, to quote the words of Chief Justice Eustis in an opinion rendered in a case where the same questions were passed on as in this case, 'of the responsibility devolving upon the court of determining the questions involved in it, 'which are among the gravest that can be submitted to a judicial tribunal.'

"Defendant objected to any testimony relative to an indorsement in the name of Webster Motors Company, the suit being brought against Webster Motors Company, Incorporated. However, it appears from the testimony offered that very frequently on notes and other documents the word 'Incorporated' or its abbreviation 'Inc.' was omitted, and it is not disputed that defendant corporation is the one for whom Leake made the indorsement. This point is not urged in defendant's brief, and I assume that it has been abandoned. No authority has been cited on this point, but it appears that 'where a name, other than the regular corporate name by which the corporation was incorporated, is used in a written contract and no agency to make it is disclosed, it is prima facie not the contract of the corporation, but the presumption may be rebutted by evidence aliunde, and this rule has been held applicable in case of a promissory note given in a name other than the regular corporate name.' 7 R. C. L., Corporations, sec. 100, p. 130.

"It is further contended that no consideration for the indorsement moved to the defendant corporation, and that therefore it is not liable.

"I am satisfied that the corporation received no part of the $500, but that fact alone would not relieve it from liability, nor does that contention appear not to be seriously urged by defendant.

" 'The credit given to the maker is consideration sufficient to bind the indorser.' Schaffter v. Irwin, 139 I·a. 92, 71 So. 241, 242; 3 R. C. L., Bills and Notes, sec. 123, p. 927.

"Considering all the testimony in the case, I am satisfied that defendant is an accommodation indorser and liable as such under the general rule just stated unless it falls within some exception in our jurisprudence.

"Defendant contends that Leake had no authority to bind it as an accommodation indorser, and its charter was introduced in evidence without objection for the pur-

pose of showing that the corporation itself had no such power.

"The powers enumerated in defendant's charter are those usually found in charters of corporations engaged in the automobile business, with the right to hold such real estate as may be necessary for the proper conduct of its affairs, and to buy, sell, trade, or exchange commercial paper of any kind whatsoever, especially chattel mortgage notes on automobiles, together with such incidental powers as may be necessary to carry out the business as therein set forth, with these powers vested in a board of directors.

"The power to borrow money and give certificates of indebtedness therefor is not one of the express powers granted to the defendant corporation by its charter. But it is a well-recognized fact that, no matter how strong a corporation engaged in the automobile sales business may be financially, occasions will arise making it necessary for the corporation to borrow money for the successful conduct of its business. Such action is universally recognized as being sound from an economic standpoint, and is also universally recognized from a legal standpoint as being one of the implied powers granted to the corporation. It is one of the incidental powers necessary to a proper conduct of the business for which the corporation was created.

"Coming, then, to the question before us in this case, does this corporation have the power to bind itself as an accommodation indorser? Certainly that power is not expressly granted defendant by its charter. Is it, then, impliedly granted?

"In the famous Dartmouth College Case, 4 Wheat. 518, 4 L. Ed. 629, Chief Justice Marshall says:

"'A corporation, being a mere creature of the law, possesses only those powers which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created.'

"This doctrine is approved and reaffirmed in the early Louisiana case of Louisiana State Bank v. Orleans Navigation Co., 3 La. Ann. 294.

"'The general rule is that it is ultra vires of a corporation to execute and issue accommodation paper. Unless the corporation is specially authorized to do so, the execution or indorsement of accommodation paper for the benefit of third persons is an act beyond the scope of its corporate authority. The grounds on which this proposition rests are stated elsewhere.' 7 R. C. L., Corporations, sec. 596, p. 602.

"The section referred to in the last sentence quoted above reads as follows:

"'As to a general rule, corporations may not lend their credit in the form of accommodation indorsements, suretyships, and guaranties. This proposition rests upon the very evident reasons: (1) that the corporate funds belong to its shareholders, and, by the very terms of the law creating it, cannot be devoted to any other purpose than those indicated by its charter and constitution; (2) that to do so would be to exercise a power not conferred by the state, either expressly or impliedly; and (3) that such obligations rest on no consideration, and would not, therefore, be valid, but would amount to a donation of the corporate funds, and therefore an unlawful diversion. To fix such a liability upon a corporation, it is necessary to establish not only authority in the officer or agent to execute the paper, but also power in the corporation to bind itself in that way. In a few cases it has been held that private corporations may issue accommodation paper, provided the directors and stockholders all assent and there are no creditors to object.' 3 R. C. L., Bills and Notes, sec. 300, pp. 1091, 1092.

"'Unless the corporation be specially authorized to do so, the execution or indorsement of accommodation paper for the benefit of third persons is an act beyond the scope of its corporate authority.' Daniel on Negotiable Instruments (4th Ed.) sec. 386.

"'Judicial authority is nearly unanimous to the effect that a corporation has no power to make or indorse commercial paper for the mere accommodation of another person or corporation.' 4 Thom. Corp. sec. 5739.

"'By the overwhelming weight of authority, a corporation has no power to issue or indorse, for the accommodation of others, bills or notes in which it has no interest, unless, as is seldom if ever the case, such power is expressly conferred.' 7 Am. & Eng. Enc. of Law (2d Ed.) 793.

"Plaintiff cites considerable authority to show that an officer of a corporation has implied power to borrow money, to execute notes, accept bills, and indorse paper for the corporation, especially when the directors have held him out as their agent and permitted such transactions in the usual course of business. I have examined all these authorities that are presently available, and I agree with counsel for plaintiff. But their application is to be limited to the matters therein stated, and the question of indorsing for the accommodation of a third person is not discussed. Then, too, the note here sued on seems to be the first case of an accommodation indorsement by Leake as manager that was brought to the attention of any of the other directors or stockholders of the defendant corporation, and it does not appear to have been known to them until some months after the execution of the note.

"Plaintiff cites the case of Gair Co. v. Columbia Rice Packing Company, Limited, 124 La. 193, 50 So. 8, 10, as authority on the point just discussed, but from an examination of the case it will be found that the contract of suretyship was held not binding because it was ultra vires the corporation, even though the court concluded that the guaranty was given with the knowledge and consent of the president and directors of the defendant corporation, and was given for the benefit of a company in which defendant was a stockholder.

"In its opinion the court said:

"'It is elementary that a corporation possesses only those powers which its charter confers upon it either expressly or by implication.'

"And, after enumerating the powers of the corporation as defined by its charter, continues:

"'There is nothing here that would authorize the company to guarantee, gratuitously or otherwise, the contract of a third person.'

"Plaintiff introduced evidence (over the objection of defendant) in an effort to fix the liability of defendant by estoppel or ratification.

"In the case of Union Pacific Railway Co. v. Chicago, etc., Railway Co., 163 U. S. 564, 16 S. Ct. 1173, 1180, 41 L. Ed. 265, we find the following:

"'A contract made by a corporation beyond the scope of its powers, express or implied, on a proper construction of its charter, cannot be enforced, or rendered enforceable by the application of the doctrine of estoppel.'

"There is authority, however, for a relaxation of this rigid rule in some cases, a distinction being made between contracts foreign in nature to those contemplated by the corporation's charter and contracts merely in extension of some corporate power. This distinction is of importance when accommodation paper of a corporation is in the hands of an innocent holder for value. It would not be disputed, as has already been noted, that the defendant corporation, since it is not forbidden in its charter, could borrow money whenever the necessity of its business required, and issue customary evidence of indebtedness therefor, such power being incidental to those expressed in its charter, because necessary in carrying out the purposes of its incorporation.

"It may then be said that defendant corporation, thus having power to issue notes, merely exceeded the limit of its right to exercise the power when it issued a note for accommodation. It may also be true, as is held in some cases, that the title of the holder of such paper before maturity can only be defeated by proof that he took it with knowledge that it was accommodation paper, or under such facts and circumstances that he is chargeable with notice of that fact.

"From the testimony in this case, as has previously been stated, I am convinced that plaintiff made the loan to Mr. Brackin after Mr. Leake offered to indorse the note, having previously refused to make the loan to Brackin without indorsement. It also appears that plaintiff consulted Mr. Hardeman at the Bank of Minden to find out if the indorsement of the Webster Motors Company by Mr. Leake was good for $500. Under all the facts and circumstances of the case I am of the opinion that plaintiff is chargeable with notice that the defendant Webster Motors Company, Incorporated, was nothing more than an accommodation indorser, and he is, of course, charged with notice of the

powers of the corporation as granted in its charter, the charter being a matter of public record. Plaintiff, I am sure, thought that he was getting good security on his note, but he proceeded under the erroneous assumption that the indorsement was valid and binding.

"On these points reference may be made to the case of Johnson v. Johnson Brothers (108 Me. 272, 80 A. 741) Ann. Cas. 1913A, page 1303, where, in an elaborate opinion and in copious notes, these questions are fully discussed, and form, in some measure at least, a basis for the conclusions here reached.

"However, I am of the opinion that plaintiff failed to make out a case of estoppel. There is no testimony to show that Leake ever executed or indorsed notes for the corporation, prior to the date of the note here sued on, other than in the usual course of business, that is, for the purpose of borrowing money for the corporation or for the purpose of negotiating notes payable to the order of the corporation, and in all of these cases the proceeds were credited to the account of the corporation.

"We come then to the question of ratification. From the testimony it appears that the officers of the corporation consistently denied legal liability on the note, but did, from time to time, express a desire and perhaps an intention to pay the note in order to avoid the embarrassment of a suit.

"It is further shown that the note was charged to the account of Brackin on the books of the corporation and that Brackin gave his note for this, with other items charged to him. I am not convinced that any officer of the corporation had a part in charging the note in question to Brackin's account or in taking from Brackin a note for the total amount charged to him on the books of the corporation, but I am convinced from the testimony that this was done by the auditors employed to check the books of the corporation, with the possible assistance of Miss Gladden, the bookkeeper.

"But, assuming that the officers did have a part in these transactions, even then there would not be a ratification. If Mr. Leake could not bind the corporation by the indorsement in the first instance, then Mr. Wideman as president could not have ratified it and made it binding on the corporation.

"'Ratification cannot give effect to an unauthorized act unless the corporate body or officer making the ratification could in the first instance have authorized the act,' 7 R. C. L., Corporation, sec. 664, p. 663.

"Granting that the board of directors of the corporation might have authorized the indorsement in the first instance or might have ratified it later, there is nothing whatever to show that the matter was ever considered by the board.

"Plaintiff, in his brief, says: 'If the corporation can be allowed to repudiate such acts as they see fit the public would be at a great disadvantage in dealing with them.' We agree with him. It is to be regretted that plaintiff cannot here be given the relief prayed for in view of the fact that he made this loan honestly and sincerely believing that his note bore a valid and binding indorsement. But it must be remembered, as was said in an early Louisiana case, 'corporations possess only jura minorum and cannot contract for all purposes like persons of full age and sui juris.' When a contract is clearly ultra vires the corporation, it is the plain duty of the court to so hold, in the interest of the public, that the corporation shall not transcend the powers granted; in the interest of the stockholders, that capital shall not be subjected to the risk of enterprises not contemplated by the charter, and therefore not authorized by the stockholders in subscribing for the stock; and because of the obligation of everyone entering into a contract with a corporation to take notice of the legal limit of its powers.

"Other authorities have been cited by counsel for plaintiff in his able brief, dealing with the law of negotiable instruments, and with the liability of corporations for the acts of their agents, but they are cases in which individuals rather than corporations were involved, or cases in which the power exercised was either expressly granted in the corporation's charter or necessarily incidental to the powers granted."

For the reasons assigned, the judgment appealed from is affirmed.