214 So.2d 167 (1968)
NORTH AMERICAN SALES ALLIANCE, INC. et al.
v.
CARRTONE LABORATORIES, INC., et al.
No. 2999.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1968.
Rehearing Denied October 7, 1968.
Writ Refused December 10, 1968.
Baldwin, Haspel, Molony, Rainold & Meyer, Lawrence J. Molony, New Orleans, for Carrtone Laboratories, Inc., defendant-appellee.
*168 Fernand F. Willoz, III, New Orleans for Earl T. Carr, defendant-appellee.
Cabral & Cabral, Metairie, Coe, Nowalsky & Lambert, New Orleans for Henry L. Ostrich, plaintiff-appellant.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
CHASEZ, Judge.
This litigation was initiated on March 29, 1963 by suit filed by North American Sales Alliance, Inc. (hereinafter referred to as NASA) and Henry L. Ostrich, against Carrtone Laboratories, Inc. and Earl T. Carr, wherein NASA and Ostrich claimed a sum of $474,000.00 for alleged loss of business, loss of wages and indemnification.
Plaintiffs' claim was predicated upon an alleged agreement between themselves and Carr and Carrtone, entered into on February 3, 1963. This agreement is as follows:

"AGREEMENT
"This agreement made this 3rd day of February, 1963, between Carrtone Laboratories, Inc., a Del. corp., herein called "Carrtone", and Henry L. Ostrich, herein called "Ostrich."
"Whereas Ostrich is the owner of all of the outstanding stock of North American Sales Alliance, Inc., a La. corp. herein called "NASA", and Ostrich desires to acquire management advice and services for NASA from Carrtone.
"Now, therefore, for and in consideration of the agreements and considerations herein mentioned, Carrtone and Ostrich do hereby agree as follows:
"1. Ostrich does hereby sell, assign and transfer unto Carrtone one hundred (100) shares of common capital stock of North American Sales Alliance, Inc. (NASA) and Ostrich represents and warrants that said 100 shares constitutes all of the outstanding stock of NASA and Ostrich further warrants and represents that he is the sole owner of said 100 shares of stock and that he has the absolute right to assign and trannsfer same free and clear of any and all rights and claims of any other persons.
"2. Carrtone does hereby agree to execute and deliver to Ostrich as soon as reasonably possible an option to purchase up to 5,000 shares of Carrtone stock at $2.00 per share upon and subject to the terms and conditions of the stock options authorized by the stockholders and directors of Carrtone in August, 1962.
"3. Carrtone, as the sole stockholder of NASA, agrees to elect Ostrich to the Board of Directors of NASA, and Carrtone agrees to cause the Board of Directors of NASA to elect Ostrich as the current president of NASA as provided in the Articles and Bylaws of NASA.
"4. Carrtone, as the sole stockholder of NASA, agrees to cause NASA to enter into an employment contract with NASA which contract shall provide, among other things, as follows:
"a. Said employment contract shall be effective from and after Feb. 1, 1963.
"b. Ostrich shall be paid a base salary of $1,500.00 per month and in addition thereto he shall be paid as additional compensation for the fiscal year ending May 31, 1964, and thereafter an amount equal to five per cent (5%) of the net profits after all taxes of NASA; said net profits shall be determined under usual accounting rules as certified by NASA's auditor; provided however; Ostrich's total compensation from NASA shall never exceed $24,000.00 per annum without the express approval of the Board of Directors of NASA and Carrtone, and NASA's net profit shall be determined based solely on NASA's operations and as if NASA filed separate federal income tax returns.
"c. Ostrich shall receive from NASA a car allowance of $150.00 per month and he shall be reimbursed for all gas, oil and *169 grease applicable to the business use of said car.
"d. In the event 40% or more of Carrtone's stock shall be transferred to a person or persons so that Carrtone shall have new management, or in the event Carrtone shall sell a major part of its assets or business, or in the event Carrtone shall be merged with or into another company, or companies, or in the event of the occurrence of any combination of such events, then the employment contract between NASA and Ostrich shall be subject to renegotiation in all respects by either party thereto upon written notice from such party.
"e. It is understood that Ostrich shall devote substantially all of his time to the business of NASA but this shall not prevent him from investing in other businesses; provided however, Ostrich shall not engage in any business in competition with or competitive to NASA so long as Ostrich is employed by or receiving payments of any kind from NASA or Carrtone.
"f. The employment contract between NASA and Ostrich shall be presented to the Board of Carrtone for its information at the next meeting of such board.
"g. As long as Ostrich is the sole stockholder of NASA, Earl T. Carr, individually, shall use his best efforts to cause Ostrich to be elected to the Board of Carrtone.
"h. Carrtone shall indemnify Ostrich as to any NASA accounts which Ostrich has personally guaranteed in writing prior to Jan. 31, 1963.
"i. Said employment contract shall be for a period of five (5) years from and after Feb. 1, 1963, subject to the terms and conditions hereof.
"5. This agreement is executed by the parties hereto on this 3rd day of February, 1963.
 CARRTONE LABORATORIES, INC
 By Earl T. Carr, president. (s)
 s/ Henry Leo Ostrich 
 HENRY L. OSTRICH
 Witness to both signatures
 J. D. Buford"
On June 4, 1963 Carrtone filed an exception of no cause or right of action to plaintiff's suit. On the same day it filed its answer to the suit denying any liability to plaintiffs and incorporating in its answer a reconventional demand against Ostrich and a third party action against Carr. In its answer, incorporated with its general denial, Carrtone alleged that the actions undertaken by Carr in signing the agreement were ultra vires, wholly without authority from either the Board of Directors of Carrtone or Corporate by-laws or Charter, and therefore could not have had the effect of binding Carrtone. Alternatively Carrtone alleged that that agreement was of itself invalid and void for lack of consent of Carrtone due to errors of fact, misrepresentation and fraud perpetrated by plaintiff Ostrich.
Additionally Carrtone as the basis for its reconventional demands stated that NASA and Ostrich were indebted to it for the amount lost by Carrtone because of their actions under the agreement. Carrtone alleged further that as it was Carr's irresponsible actions which exposed Carrtone to *170 possible liability, Carr was liable to it on the third party demand for any judgment against Carrtone.
On September 3, 1963 Carr filed an exception of no cause or right of action to the suit of NASA and Ostrich and on the same date he filed his answer to their suit. Carr in his answer alleged that in his dealings with NASA and Ostrich he was at all times acting in his corporate capacity as President of Carrtone, and that he was fully authorized to bind Carrtone as he did. In the alternative he pleaded the nullity of the February 3, 1963 agreement on the basis of alleged fraudulent misrepresentation made by Ostrich.
On November 18, 1963 NASA and Ostrich filed a plea of equitable estoppel to the exceptions of no cause or right of action filed by Carr and Carrtone.
On December 11, 1964 a motion was filed by P. M. Flannagan, as trustee for NASA which went into bankruptcy, asking to be added as party plaintiff.
On March 19, 1965 judgment was rendered rejecting plaintiffs' plea of equitable estoppel. No appeal was taken from this decree.
On May 11, 1965 Carrtone again filed an exception of no cause or right of action to the plaintiff's demand, and on June 17, 1966 he reurged this exception with reference to Ostrich.
After trial of the matter judgment was rendered on March 31, 1967 wherein defendants' exceptions of no cause or no right were sustained as to NASA; no mention was made as to the exceptions as they pertained to Ostrich. However there was judgment on the merits in favor of defendants Carr and Carrtone against Ostrich dismissing his suit against them. Additionally there was judgment in favor of Ostrich as defendant in reconvention against Carrtone, plaintiff in reconvention, dismissing Carrtone's reconventional demand; and finally there was judgment in favor of Carr as third party defendant against Carrtone, third party plaintiff, rejecting Carrtone's third party demand against Carr.
The only appeal which has been taken in the matter is Ostrich's appeal from the judgment dismissing his suit against Carr and Carrtone; thus this is the only matter before us. As such we are faced solely with a suit on the agreement of February 3, 1963.
We have reviewed the reasons for judgment given by the trial judge in support of his decree in this matter. We find them to be an excellent statement of the factual and legal issues presented by this case, and fully concur with their factual and legal conclusions. Further we examined carefully the voluminous record in this matter, which includes over 3,000 pages of pleadings, testimony and other documents of evidence, and conclude that this record substantiates fully the trial judge's reasons for judgment. We therefore adopt these reasons as our own as follows:
"On February 3rd, 1963 Earl Carr, purportedly acting in his capacity as president of Carrtone Laboratories, Inc., entered into a written agreement with Mr. Ostrich. This document provided that in consideration of Ostrich conveying all of the outstanding capital stock of NASA (North American Sales Alliance, Inc.) to Carrtone, it agreed: (1) To secure the election of Ostrich to the Board of Directors and Presidency of NASA; (2) To cause NASA to enter into an employment contract with NASA (obviously it was intended to be a contract with Ostrich), which shall provide, among other things, that Ostrich be employed for a period of five (5) years, commencing from February 1, 1963, at a base salary of $1,500.00 per month, plus five percent (5%) of the entire profits, but, not to exceed a total yearly compensation of $24,000.00, and a car allowance of $150.00 per month; and (3) Carrtone shall indemnify the plaintiff for any NASA accounts personally guaranteed by him, in writing, prior to January 31, 1963. There *171 are other provisions in the agreement, which are not relevant to the issues in this case, and therefore have been omitted.
"It is urged as a defense, that the aforegoing agreement is not binding upon Carrtone, since its president did not possess the authority to enter into such a contract on behalf of the corporation. If this contention is valid, then it necessarily follows, that the corporation was not contractually obligated to Ostrich and therefore cannot legally be liable for a breach of its convenants.
"No evidence was presented to sustain that the president of Carrtone was authorized, either by its charter, or bylaws, to execute on its behalf, an instrument of the character and with the import of the contract with Mr. Ostrich. There was no resolution of the Board of Directors, specifically or generally, empowering Mr. Carr to enter into such an agreement with Mr. Ostrich for the acquisition of NASA. Nor, was his action in this regard over expressly or tacitly ratified by the Board of Directors.
"As its president, Mr. Carr, possessed the inherent power and authority to perform these administrative and other related acts normally exercised by a corporate officer, of equal status in the ordinary course and scope of managing the day to day affairs of a corporation engaged in identical pursuits with those of Carrtone and not expressly inhibited by the charter or bylaws. Any act of a corporate officer, which exceeds these standards, is beyond the scope of his authority and is not binding upon the corporation, unless it is subsequently ratified, consented to, or acquiesced therein.
"The court cannot construe Mr. Carr's action of purchasing a totally unrelated business and contractually binding Carrtone for a period of five years, with a potential financial obligation in excess of $100,000.00, as being a routine, normal act in the ordinary scope and course of managing the day to day affairs of a corporation engaged in the manufacturing of drugs. Nor does the evidence warrant the conclusion that the Board of Directors, by their inaction or acquiescence in similar transactions in the past, clothed Mr. Carr with the apparent authority to bind the corporation, as he attempted to do in this agreement. The record does not reflect a single instance where Mr. Carr previously entered into a contract of this nature on behalf of Carrtone, with the board's tacit consent and approval. There is no basis, in law or fact, to assume that Mr. Carr possessed the implied or apparent authority to bind the corporation in this agreement.
"The mere fact, that the document was drafted by the general counsel for Carrtone, who also expressed the opinion, in the presence of the plaintiff, that Mr. Carr did not need the authorization of the directors, is not in itself sufficient to vest apparent authority in Carr to bind the corporation. Nor, does it produce the legal consequence of relieving the plaintiff of the duty of ascertaining the agents authority to act for his principal.
"Finally, did the corporation ratify the contract by the failure of its directors to repudiate it? This query must be answered in the negative.
"There is no testimony tending to establish that the directors had any knowledge of the negotiations between Carrtone and Ostrich, or of the contents of the agreement dated February 3, 1963, until after its execution. Upon learning of this transaction, the directors convoked a meeting of its Board on March 23, 1963, and discharged Mr. Carr, as president of Carrtone. Admittedly, the minutes of this meeting do not reflect a rejection or disavowal of the agreement with Ostrich, however, this would have been a vain and useless act in view of the fact that Carr had already repudiated the contract the previous week. Furthermore, there was little opportunity for the Board to take any additional action, since the instant suit was filed six days after their meeting.
*172 "It is the opinion of the Court, that Mr. Carr's action of entering into the agreement with Ostrich, was beyond the scope of his authority as president and was not authorized by the charter, bylaws, or Board of Directors. It was manifestly an ultra vires act of a corporate officer, and as such, is not binding on the corporation. Accordingly, the plaintiff's demand against Carrtone Laboratories, Inc. is rejected.
"The reconventional demand of Carrtone Laboratories against the plaintiff is likewise rejected for the want of sufficient proof to substantiate that it actually incurred the loss attributable to the expenditures by Carrtone in pursuance of the agreement with Ostrich. Further, since Carrtone Laboratories was not cast in judgment, its third-party claim filed against Mr. Carr is likewise dismissed.
"The petitioner also seeks to recover from Mr. Carr personally, the full five years salary, together with the indemnification of $45,000.00 representing the credit obligations of NASA, which were personally guaranteed by Mr. Ostrich. In substance, the plaintiff is endeavoring to have the Court accept the agreement of February 3rd, as an executed contract and to exact specific performance of this defendant in fulfilling all of its terms and provisions, particularly in those of its aspects which are financially beneficial to Mr. Ostrich.
"The relief sought, is predicated upon the erroneous assumption that this agreement is a Contract of Employment and Indemnification by Carrtone in favor of the plaintiff. This document explicitly sets forth that Carrtone agrees to cause NASA to enter into a contract ostensibly with Mr. Ostrich, providing, "among other things" his employment for five years with a prescribed rate of compensation and indemnification as a Guarantor. Under the most favorable construction to the plaintiff, this is an agreement to contract and not a contract per se. As such, it is not susceptible of being enforced as an executed instrument, which would admit of fulfillment under the existing circumstances, so as to entitle the plaintiff to the relief which he seeks. Mr. Ostrich's right of recovery is limited to the actual damages he sustained as a result of the alleged breach by Carr and not the full consideration he would have received, had the contract been consummated and performance begun by him thereunder. This burden of proof he failed to bear, and therefore his demand against Carrtone must also be rejected."
We find these reasons to be in complete harmony with the statutory authority which outlines the conditions by which corporations are to be operated and managed through their officers and agents. (See LSA R.S. 12:35). It has been well settled by our jurisprudence that any person attempting to enforce an alleged contract must first show that the corporate officer with whom he dealt had the authority to bind the corporation. This is particularly true in those instances wherein the officer is exercising authority which contemplates more than the normal and usual power of an officer whose duty it is simply to manage the day-to-day business of the corporation. T. P. Ranch Co. v. Gueydan & Riley, 148 La. 455, 87 So. 234 (1921). Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (1957), and numerous citations therein.
We feel compelled to state at this point that although the trial judge based his decision on what is in our opinion a correct conclusion as to the ultra vires nature of Carr's action and upon the conclusion that the agreement between plaintiffs and Carr individually is merely an agreement to contract and not a binding contract per se, from Carr's breach of which plaintiffs could show no damages, nevertheless it is our conclusion that the alternative defenses of both Carr and Carrtone as to the nullity of the agreement are also quite valid. We hold that the record fully substantiates the finding that were it not for Ostrich's misrepresentations as to several material factual issues Carr would never have entered the agreement from the beginning. These misrepresentations went to the very *173 heart of the agreement itself, and involved such essential factors as the amounts of the accounts which Ostrich had personally guaranteed prior to the date of the agreement, and Ostrich's ability to perform under this agreement in accordance with its specifications. We thus add these conclusions as additional reasons for rejecting Ostrich's demands.
For the reasons hereinabove stated the decision of the trial judge is affirmed at appellant's cost.
Affirmed.