264 So.2d 734 (1972)
CAREY HODGES ASSOCIATES, INC.
v.
CONTINENTAL FIDELITY CORPORATION.
No. 8891.
Court of Appeal of Louisiana, First Circuit.
June 26, 1972.
William Brown, Baton Rouge, for appellant.
M. Aubrey McCleary, Jr., McCollister, Belcher, McCleary & Fazio, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and TUCKER, JJ.
*735 TUCKER, Judge.
Plaintiff, Carey Hodges Associates, Inc., instituted suit against defendant Continental Fidelity Corporation for Fifty-seven Thousand, Two Hundred Sixty-one and 36/100 ($57,261.36) Dollars, the balance allegedly due on an indebtedness resulting from services rendered on an alleged written agreement between the parties entered into September 5, 1969. Prior to that date defendant had agreed to purchase certain property near Prairieville, Louisiana, which it considered suitable for a racetrack, and had retained Richard E. Cheek as its manager, agent, employee, or representative to obtain the services of an engineer for survey purposes, which Mr. Cheek did by hiring plaintiff. Plaintiff prepared the necessary surveys upon which defendant obtained title to the property in question. Plaintiff was paid Five Thousand and no/100 ($5,000.00) Dollars for its services, which Mr. McDonald Lynch, president of defendant corporation, testified constituted payment in full for the services contracted for and rendered at the time of payment.
Subsequently Lynch asked Cheek to prepare a financing package in order that defendant might borrow money with which to promote the track. In accordance with these instructions, Cheek hired the services of appraisers, a construction engineer, Mr. Lloyd Rockhold, for estimates, and plaintiff as an engineering firm for preparation of plans, specifications, and designs. Defendant used plaintiff's work in its preliminary construction and for submission to lending agencies. Rockhold estimated construction costs at $889,488.00. Plaintiff alleges the figure agreed upon between the parties herein was seven (7%) per cent of that total, or $62,261.36, less the $5,000.00 already paid. The agreement upon which plaintiff sued is as follows in part:
"Accordingly, we will prepare and furnish construction plans and/or specifications as may be requested by either you or Mr. Loyd Rockhold, the construction cost estimator retained by your project appraiser, for a lump sum fee of seven percent of the total project estimate; which estimate will include, but will not be limited to, all site building, electrical, stands, fencing and other work but will not include land cost whether detailed design and/or layout of all these items be specifically requested by you or Mr. Rockhold or not.
Although this total lump sum fee will technically not be due and payable until completion of the plan and specification work which may be requested, we must nonetheless reserve the right to submit periodic statements in amounts representing our estimated proportionate project progress."
The foregoing terms were accepted and commencement of work authorized by Richard E. Cheek, as the agent for Continental Fidelity Corporation.
Plaintiff later presented a bill to Cheek for $57,261.36, which he considered the balance due, and Cheek expressed great surprise at the amount of this bill. When it was presented subsequently to Mr. Lynch, president of defendant corporation, he, too, questioned the amount of the bill, but did not reject it. Only later did Lynch, as president of defendant corporation, deny that Cheek had the authority to sign any such contract for defendant corporation.
Plaintiff filed an affidavit and a lien against defendant shortly after Mr. Lynch expressed surprise at the amount of the bill. Upon trial in the lower court defendant denied any liability and reconvened for $25,000.00 damages as a result of injuries allegedly caused defendant by the filing of plaintiff's lien.
The trial judge dismissed plaintiff's suit and also defendant's reconventional demand without any written reasons for judgment. Plaintiff has appealed, contending that Mr. Cheek did have the authority to contract with plaintiff, and that, in the alternative, if the court should find him lacking in express authority, that he was clothed with *736 apparent authority to contract with plaintiff in the name of defendant corporation. Defendant asserts vigorously that Mr. Cheek had neither express nor implied authority to sign any contract with plaintiff for the defendant corporation.
Although the plaintiff-appellant had dealt almost exclusively with Richard Cheek in its negotiations concerning work for defendant corporation and believed him to be acting as an agent for defendant, the record is devoid of any evidence which would justify appellant in relying upon Mr. Cheek as being properly authorized to contract with the plaintiff concern in regard to the plans and specifications and designs submitted on or about September 5, 1969. Cheek may have been acting within his general mandate from defendant corporation in asking plaintiff for its plans and designs, but, under the terms of La. Civil Code Article 2997, an express or special authorization is required before a principal can be bound by the contracts of its agent or mandatary acknowledging debts. Defendant corporation cannot be bound by the letter of September 5, 1969, signed by its alleged agent Richard Cheek, without a resolution from defendant's Board of Directors authorizing such action, or some sort of express ratification, which is wholly lacking.
The jurisprudence of this state has been consistent in holding that the person who deals with a corporation is chargeable with notice of the limitations and restrictions placed upon it by statute and is generally bound to know whether or not the person who presumes to represent the corporation and act in its name is authorized to do so. Our jurisprudence holds additionally that the person dealing with an agent is put on his guard by the fact of the person's alleged agency alone and deals with him at his own risk. It is his duty to inquire into and ascertain the nature and extent of his powers as an agent and determine whether or not the act or contract about to be consummated comes within the province of his agency and will or will not bind his principal. Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (1957). See also North American Sales Alliance, Inc. v. Carrtone Laboratories, Inc., 214 So.2d 167 (La.App. 4th Cir. 1968) and Builders Center, Inc. v. Smith, 228 So.2d 245 (La.App.1st Cir. 1969).
By the testimony of Carey Hodges, corporate official, quoted below, he did not discharge his obligation to inquire into the authority of Richard Cheek.
"Q. What was your understanding of did youAt the time this letter was signed on September 5, 1969, did youwhat was your understanding did you think Mr. Cheek was an officer of Continental Fidelity, Inc.?
A. I don't think I ever thought he was an officer. I asked him how he wanted this done
Q. That's this instrument?
A. And he put, `Richard Cheek, Agent." Now, I don't know what agent meant to me. That question was asked this morning, `What does agent mean to you?' I don't know what that means to me, really, other than I certainly felt I had the right towell, I considered he was working with, in one capacity or another, the people he told me he was and felt I had every right to assume that he had authority to enter into an agreement on their behalf or I never would have done it.
Q. Did you think he was an officer of Continental Fidelity?
A. I don't know that I ever thought about it one way or the other, but if I had to think right now I don't believe I would have had that impression.
Q. Did you think he was a director of Continental Fidelity?
*737 A. No, I had no idea if he was a stockholder or what, but I figured that he certainly was grown-up enough to know who he was working for and what they had told him to do and what they told him not to do and certainly in the position he's in wouldn't go around signing contracts for a big insurance company if he didn't have the authority to do it."
The testimony of McDonald Lynch, given below, as well as that of Richard Cheek, indicates clearly that Cheek was a promotor of the racetrack and not an agent or employee of defendant corporation. He was in fact acting in his own interest in his negotiation with plaintiff.
"Q. What was Continental Fidelity Corporation's interest, or in what capacity did Mr. Cheek represent Continental Fidelity Corporation?
A. Mr. Cheek did not represent Continental Fidelity Corporation. He acted as a promoter, both in sale of the property to Continental Fidelity, and we entered into an agreement for him to be the promoter of the races held on the existing facilities.
Q. Did Continental Fidelity Corporation ever name Richard Cheek as its agent to have certain construction work performed on the real estate?
A. Not to my recollection.
Q. . . . And he was never your agent.
A. No. We by instruction in writing from time to time gave him authority to do specific things, but only in writing."
Mr. Cheek admitted that he did not "exactly know" whether defendant corporation had ever given him permission to hold himself out as its agent. Furthermore, the evidence reveals that Mr. Lynch had signed all important contracts himself: the act of cash sale by which the tract upon which the racetrack was to be built was purchased, the contract with the Cryer Construction Co., and the lease on the property involved with Appletree Investments, Inc.
It is significant that others dealing with defendant like Mr. Cryer were put on notice and exercised their affirmative obligation to investigate Cheek's authority to act for defendant corporation with the result that they secured contracts signed by the president, McDonald Lynch, plus a copy of a resolution of the Board of Directors of defendant corporation authorizing Mr. Lynch's action.
For all of the foregoing reasons it is clear that Mr. Cheek did not have the authority to bind defendant corporation to the September 5, 1969 contract here in question, and that the plaintiff was not justified in relying upon his signature. The decision of the trial court is correct and it is affirmed at appellant's costs.
Affirmed.