363 So.2d 1201 (1978)
FIRST NATIONAL BANK OF RUSTON, Appellee,
v.
PINE BELT PRODUCERS CO-OP, Martin S. Sanders, Jr., Claude L. O'Bryan, et al., Appellants.
No. 13618.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1978.
Rehearing Denied, November 14, 1978.
Writ Refused December 14, 1978.
*1202 Barham, Adkins & Coleman by Ronald G. Coleman and Charles C. Barham, Ruston, for appellee.
Sanders & Castete by Martin S. Sanders, Jr., Winnfield, for appellants Pine Belt and Sanders.
Kelly, Ware & Salim by Richard N. Ware, Natchitoches, for appellant O'Bryan.
Before PRICE, MARVIN and JONES, JJ.
Rehearing En Banc. Denied, November 14, 1978.
JONES, Judge.
Defendant, Pine Belt Producers Co-Operative, Inc., a non-profit corporation, appeals from a judgment against it based upon two promissory notes signed by its president, payable to the order of the plaintiff. Defendants, Claude L. O'Bryan, president of Pine Belt, and Martin S. Sanders, Jr., Vice-President of Pine Belt, appeal the judgment which held them solidarily obligated to plaintiff based upon their Continuing Guaranty Agreements in favor of the plaintiff wherein they guaranteed the payment of Pine Belt's obligations. Sanders also complains that the judgment incorrectly enforced in favor of plaintiff his individual mortgage note and chattel mortgage note, which he had pledged to the plaintiff as security for Pine Belt's obligations. O'Bryan complains the judgment erroneously *1203 enforced his individual mortgage note which he had pledged to plaintiff as security for Pine Belt's obligations. We reverse.
On April 18, 1973 O'Bryan in his capacity as president of Pine Belt, pursuant to a resolution of the board of directors of the corporation, signed on behalf of the corporation a promissory note payable to plaintiff in the amount of $35,000, due on or before 6 months from date, bearing 8% per annum interest from date as consideration for a loan of $35,000 to the corporation. This note was secured by a pledge of a collateral chattel mortgage note in the amount of $35,000 and by a collateral mortgage note in the amount of $45,000 executed by Sanders. The Pine Belt note was also secured by a collateral mortgage note executed by O'Bryan in the amount of $35,000 which he pledged to the bank.
Following the execution of the Pine Belt note reflecting the three pledged notes as security and the execution of a collateral pledge agreement by Sanders and O'Bryan, the plaintiff deposited in a checking account created by Pine Belt the $35,000 proceeds from the loan. Pine Belt placed on file with plaintiff a certified copy of a resolution of the board of directors of Pine Belt designating the bank as a depository of corporate funds which resolution authorized the withdrawal of these funds by appropriate instruments signed by any two of its three listed officers, namely, Claude L. O'Bryan, President; Martin S. Sanders, Jr., Vice-President; and Linda S. Wise, Secretary of the Corporation. The pertinent part of the resolution is quoted as follows:
"RESOLVED, that the bank be designated as a depository of this corporation and that funds of this corporation deposited in said bank be subject to withdrawal upon checks, notes, drafts, bills of exchange, acceptances, undertakings of other orders for the payment of money when signed on behalf of this corporation by any two (2) of its following officers, to-wit:
Claude L. O'Bryan Martin S. Sanders, Jr. Linda S. Wise"
The proceeds of the loan were withdrawn from the checking account in the following manner:
1. One check dated April 18, 1973 in the amount of $15,000 payable to Pine Belt Producers Co-Operative, Inc., executed by Pine Belt over the signatures of Claude L. O'Bryan and Martin S. Sanders, Jr.
2. One check dated April 24, 1973 payable to Pine Belt Producers Co-Operative, Inc., in the amount of $2,000 executed by Pine Belt over the signatures of Martin S. Sanders, Jr. and Claude L. O'Bryan.
3. One check dated April 27, 1973 in the amount of $3,512.50, payable to Winn State Bank & Trust executed by Pine Belt over the signature of Martin S. Sanders, Jr.
4. One check dated May 1, 1973 in the amount of $500 payable to Merchants Insurance Agency, drawn by Pine Belt over the signatures of Linda S. Wise and Claude L. O'Bryan.
5. One check dated May 1, 1973 in the amount of $3,000 payable to Merchants Insurance Agency, drawn by Pine Belt over the signatures of Linda S. Wise and Claude L. O'Bryan.
6. One debit against Pine Belt's checking account by plaintiff on June 8, 1973 in the amount of $10,987.50 per authority of Jim Hall, executive vice-president of the plaintiff bank, which plaintiff's initiated checking account withdrawal was credited to Pine Belt's loan from plaintiff of April 18, 1973. This withdrawal left Pine Belt's checking account with a "0" balance.
There was no activity in the Pine Belt checking account following the bank's initiated withdrawal until December 24, 1973. On this date Pine Belt president, O'Bryan, pursuant to the authority of a resolution of the board of directors of Pine Belt[1] dated *1204 December 21, 1973, borrowed the sum of $20,000 from plaintiff. Claude L. O'Bryan signed on behalf of Pine Belt in his capacity as president of the corporation a note for said loan in the principal amount of $20,000, due on demand, bearing 10% per annum interest. In consideration of this note plaintiff issued its cashier's check bearing date of December 24, 1973 payable to the order of Pine Belt. This check was endorsed as follows: "For Deposit, Pine Belt Producers Co-Operative, Inc., Claude L. O'Bryan, President" and was then deposited in Pine Belt's checking account with plaintiff. The proceeds of this deposit were withdrawn from the checking account by a draft dated December 24, 1973, payable to the order of Sam Factor and on the same date deposited to Sam Factor Account No. XX-XXX-X-XX at the First National Bank of Ruston. This draft of Pine Belt Producers Co-Operative, Inc. was signed by Claude L. O'Bryan, president, and was drawn upon Pine Belt's checking account in the First National Bank of Ruston, Louisiana. There has been no activity in Pine Belt's checking account with plaintiff other than that hereinabove set forth.
On April 5, 1974, Claude L. O'Bryan presented to plaintiff the following resolution of the board of directors of Pine Belt authorizing him to make an additional loan from plaintiff, to-wit:
"RESOLVED that pursuant to the needs of the co-operative for additional equipment rentals and to cover outlays and expenses not usually incurred in the operation because of the nationwide truck strike, the President of the association be and he is hereby authorized to borrow on behalf of the association from the First National Bank of Ruston, Louisiana, sum or sums of money up to $80,000 and to execute any and all notes, pledges, or other security devices in order to effectuate and complete said loan; further that in the absence of the President, either the Vice-President, that is John G. Jones or Martin S. Sanders, Jr., in co-signature with the Secretary-Treasurer, Linda S. Wise, are authorized to make the same loan and jointly execute evidence of such indebtedness as may be required.
RESOLVED that this be an all inclusive resolution of authority and includes the authorization of December 21, 1973 meeting."
At the time of the presentation of this resolution plaintiff prepared and presented to O'Bryan a promissory note in the principal amount of $57,199.29, payable to the order of plaintiff, due on demand, bearing 10% per annum interest from date, which note was signed by O'Bryan on behalf of Pine Belt and delivered to plaintiff. This note listed as security the same pledged collateral notes as were shown on Pine Belt's $35,000 loan of April 18, 1973.
At the time this $57,199.29 Pine Belt loan transaction was being processed in plaintiff's Ruston office, plaintiff secured Continuing Guaranty Agreements assuring the payment of Pine Belt's obligations to it from Claude L. O'Bryan in the amount of $30,000 and from Martin S. Sanders, Jr. in the amount of $75,000. Simultaneous with the receipt of this note, plaintiff delivered to O'Bryan one cashier's check payable to Pine Belt Producers Co-Operative, Inc. in the amount of $57,199.29. There was a typed endorsement on the back of the check:
 PINE BELT PRODUCERS CO-OP
 By: _________________
and O'Bryan signed the endorsement on the check and handed it to the executive vice-president of the plaintiff.
The check representing the proceeds of this loan was retained by plaintiff for the purpose of liquidating loans reflecting on its books as follows:

*1205
1. Balance of Pine Belt's loan Principal-$10,910.51
 Dec. 24, 1973, Note No. Interest - 51.52
 52126
2. Note 51046 Martin Sanders Principal- 5,800.00
 and K. R. Stephenson Interest - 145.64
 dated 2/21/73
3. Note 51079 Martin Sanders Principal- 4,700.00
 and K. R. Stephenson Interest - 118.02
 dated 2/23/73
4. Note 51036 Martin Sanders Principal- 6,100.00
 and K. R. Stephenson Interest - 153.18
 dated 2/16/73
5. Note 51037 Martin Sanders Principal- 4,500.00
 and K. R. Stephenson Interest - 113.00
 dated 2/2/73
6. Note 51109 Martin Sanders Principal- 22,700.00
 and K. R. Stephenson Interest - 570.02
 dated 3/1/73
7. Note 52127 Martin Sanders Principal- 959.54
 and K. R. Stephenson Interest - 27.19
 dated 12/24/73
8. Note 50988 Martin Sanders Principal- 342.08
 and K. R. Stephenson Interest - 8.59
 dated 2/15/73 ___________
 TOTAL: $57,199.29

Plaintiff filed this suit against Pine Belt Producers Co-Operative, Inc., on the note dated April 18,1973 in the principal amount of $35,000, alleging an unpaid balance of $25,514.47 with 8% per annum interest from January 1, 1976 and 25% of principal and interest for attorney fees and also sued Pine Belt on the note dated April 5, 1974 in the principal amount of $57,199.29 alleging an unpaid balance of $50,229.91 plus interest in the amount of 10% from January 1, 1976 and 25% of principal and interest as attorney fees. Plaintiff also sought enforcement of the pledge of Sanders' collateral chattel mortgage note and collateral mortgage note against the property mortgaged to secure these notes, and sought enforcement of the pledged mortgage note executed by O'Bryan against the property describe in his collateral mortgage. Plaintiff also sought solidary judgment against the makers of each of the Continuing Guaranty Agreements signed by Sanders and O'Bryan.
Defendant, Pine Belt, asserted in defense of plaintiff's suit:
(1) that its April 18, 1973 $35,000 note had been fully paid
(2) that its president, O'Bryan had no authority to borrow the $57,199.29 for the purpose of paying the alleged $10,962.02 balance of the December 24, 1973 $20,000 note for which it had received no consideration and for the purpose of paying the sum of $46,237.26 on the loans of Sanders and Stephenson which had no connection with the corporate affairs of Pine Belt. Pine Belt asserted it received no consideration for the note of April 5, 1974.
The trial judge rendered judgment in favor of the plaintiff as prayed for giving as its reasons "that the plaintiff herein having established the allegations of its petition by a preponderance of the evidence" and otherwise failed to articulate his reasons for judgment.
The issues are (1) did Pine Belt pay in full its debt to the plaintiff created by the $35,000 note of April 18, 1973? (2) did Pine Belt's president, O'Bryan, have authority to sign the $57,199.29 promissory note of April 5, 1974 and to endorse in blank the cashier's check given in consideration of the note and return same to the bank in payment of a $10,910.51 balance on the Pine Belt note of December 24, 1973 and in payment of personal debts of Sanders and Stephenson in the amount of $46,237.26?
Between the dates of August 28, 1973 and December 18, 1974 Pine Belt paid in cash to plaintiff the sum of $28,000. Plaintiff had on June 8, 1973 taken from Pine Belt's checking account $10,987.50. These sums received by plaintiff are more than adequate to liquidate in full the principal and interest owed on Pine Belt's note of April 18, 1973 if there were no other notes owed to plaintiff by Pine Belt on which a portion of these payments could have been properly credited by plaintiff. The only other notes held by the plaintiff during the time when these payments were made were the $20,000 note of December 24, 1973 and the $57,199.29 note of April 5, 1974. In order to resolve the plea of payment directed at the April 18, 1973 note it must first be determined whether the bank could properly apply a portion of the funds received by it toward payment of the $20,000 note or the $57,199.29 note.

*1206 WAS PLAINTIFF ENTITLED TO ATTRIBUTE ANY OF PINE BELT'S PAYMENTS TO THE $20,000 NOTE?
O'Bryan testified Pine Belt received no consideration for the $20,000 note.
The record contains plaintiff's $20,000 cashier's check issued in consideration for the note endorsed on the back for deposit Claude L. O'Bryan and a photocopy of the deposit slip, both of which establish the corporation's checking account was credited with the proceeds of the loan.
Plaintiff was directed by Pine Belt's resolution creating plaintiff as Pine Belt's depository to permit the withdrawal of Pine Belt funds from its checking account only upon presentation of instruments signed by two of its officers. The resolution listed the officers who could sign these instruments of withdrawal to be Sanders, O'Bryan and Wise.
A review of the five checks which were drawn on Pine Belt's checking account reflects that O'Bryan as president signed four of them and that all checks signed by him were co-signed by either Sanders or Wise as required by the resolution of the board of directors.
The $20,000 draft dated December 24, 1973, payable to the Sam Factor account, drawn on Pine Belt's checking account was signed for Pine Belt only by O'Bryan. The bank had no authority under the resolution of the board of directors of the corporation to permit Pine Belt's funds to be withdrawn in this manner. To do so was contrary to the resolution of the board of directors which required the signatures of two of its officers before permitting withdrawals to be made from the checking account. O'Bryan had never previously made withdrawals from this checking account by his signature alone.
The evidence establishes that "Sam Factor" was the name of a partnership composed of Sanders and Stephenson which had no business relations with Pine Belt. Pine Belt received no benefit from the deposit to the Sam Factor account.
The corporate checking account at a time when it had a "0" balance received the proceeds of the loan and for a very short period of time the claim of the bank against Pine Belt on this note was viable. However, it was immediately offset by a claim of Pine Belt against the bank for the $20,000 which the bank delivered to Sam Factor account based upon the draft signed by only one of Pine Belt's officers, dated the same day as the note.
The relationship of a bank and a depositor is that of debtor and creditor. The bank has the right to use the deposit and in consideration thereof, it covenants to pay it out only as directed by the depositor. Pelican Well Tool & Supply Co. v. Sabine State Bank & Trust Co., 18 La.App. 590,138 So. 161 (La.App. 2d Cir. 1931). The president of a corporation has no authority to withdraw corporate funds from its depository bank except in accord with authority given to him by the board of directors of the corporation. Hibernia National Bank of New Orleans v. National Bank of Commerce in New Orleans, 204 La. 777,16 So.2d 352 (1943).
In the decision of Schrew v. Scott Manufacturing Corp., 258 So.2d 668 (La.App. 4th Cir. 1972) the court refused to enforce against a corporation a contract signed only by its president where the corporate by-laws required the signature of two officers to such a contract. The court therein quoted from North American Sales Alliance, Inc. v. Carrtone Laboratories, Inc., 214 So.2d 167 (La.App. 4th Cir. 1968):
". . . . It has been well settled by our jurisprudence that any person attempting to enforce an alleged contract must first show that the corporate officer with whom he dealt had the authority to bind the corporation. This is particularly true in those instances wherein the officer is exercising authority which contemplates more than the normal and usual power of an officer whose duty it is simply to manage the day-to-day business of the corporation. T. P. Ranch Co. v. Gueydan & Riley, 148 La. 455, 87 So. 234 (1921). Buckley v. Woodlawn Development *1207 Corporation, 233 La. 662, 98 So.2d 92 (1957), and numerous citations therein."
It is significant that the resolution presented to the bank authorizing the $20,000 loan provided that the funds derived from the loan were to be used for equipment rentals and acquisitions. The Sam Factor partnership was engaged solely in factoring of accounts receivable for the Winn Farmers Co-Op and plaintiff did not attempt to show that it was authorized to permit Pine Belt's $20,000 to be paid to Sam Factor by withdrawal over the sole signature of O'Bryan.
Under these circumstances there existed no debt against Pine Belt based upon the $20,000 note of December 24, 1973 and none of Pine Belt's payments to the bank should have been attributed to payment of this obligation.

DID PINE BELT OWE PLAINTIFF ON THE $57,199.29 NOTE?
Plaintiff contends it accepted $10,962.03 of the O'Bryan endorsed $57,199.29 Pine Belt check in payment of the alleged unpaid balance on the $20,000 note (as discussed above, this note was paid in full by offset), and that the remaining $46,237.26 of the check was received in payment of the personal debts of Sanders and Stephenson.
The debts of Sanders and Stephenson were incurred as result of loans they obtained from plaintiff bank to secure funds to factor accounts receivable of Winn Farmers Co-Op. There was no relationship between Pine Belt and the debts owed by Sanders and Stephenson to plaintiff. Pine Belt received no benefit from paying these debts.
A corporate officer has no authority in absence of a specific resolution from the board of directors of the corporation to pay from corporate funds the personal debts of a corporate officer or the personal debts of a third party. Stephens v. Brackin, 16 La. App. 272, 134 So. 326 (La.App. 2d Cir. 1931); Proctor v. Opelousas Insurance Agency, 181 La. 79, 158 So. 627 (1934); Wallace v. Mouton, 170 La. 47, 127 So. 360 (1930); Lilliedahl & Mitchel v. Avoyelles Trust & Savings Bank, 352 So.2d 781 (La.App. 3rd Cir. 1977); Guaranty Bank & Trust Co. of Alexandria v. C & R Development Co., Inc., 260 La. 1176, 258 So.2d 543 (1972).
The president of a corporation by virtue of his office does not have the power to endorse checks payable to the corporation. The fact that a president is given by special resolution of the board of directors authority to secure a loan for a corporation does not constitute the president as the general financial agent of the corporation or vest in him the general authority to sign or endorse checks of the corporation. Hibernia National Bank v. National Bank of Commerce in New Orleans, supra. The Pine Belt depository resolution wherein the board of directors required the signature of two of its officers before the bank was authorized to honor checks drawn on the corporate account within itself advised the bank an unrestrictive endorsement upon a check by the president alone is not within the scope of his authority.
In the decision of Lilliedahl & Mitchel v. Avoyelles Trust & Savings Bank, supra, the corporate president by the following resolution of the board of directors was authorized to handle the corporation funds:
"`BE IT FURTHER RESOLVED that the following named officer of this Corporation, namely: MARVIN N. LILIEDAHL, President, be and he is hereby authorized to carry bank accounts for LILLIEDAHL & MITCHEL, INC., in such banks as he may deem best and to make the profits of money belonging to LILIEDAHL & MITCHEL, INC. in such accounts, and disburse monies on his signature for any purpose in connection with the purpose of the Corporation.'"
The court held the corporate president was without authority to endorse a certificate of deposit payable to the corporation and return it to the bank with instruction that the proceeds be applied to his personal debt. The court found the possession by the bank of the certificate of deposit payable to the order of the corporation and endorsed by its president did not have the effect of giving *1208 the corporation actual or constructive possession of the funds represented by the certificate of deposit and for this reason the corporation was entitled to claim from the bank the value of the certificate of deposit which the bank had applied to the personal debt of the president of the corporation.
A review of Pine Belt's resolution presented at the time O'Bryan executed the $57,199.29 note reflects the corporation authorized its president to borrow up to $80,000 to meet "the needs of the corporative for additional equipment rentals and to cover outlays and expenses not usually incurred in the corporation because of the national truck strike."
The bank by virtue of the very language of this resolution was clearly aware that the loan being obtained by O'Bryan pursuant to the resolution was not authorized to be expended for the payment of debts of third persons totally unrelated to the needs of the corporation for which the loan was designed to provide funds to meet.
Even when the corporate officer has been given the authority to endorse checks payable to the corporation, the recipient of the endorsed check who knows that the officer is breaching his fiduciary obligation by using the check for the payment of debts which he has no authority to pay, is under a duty to inquire of the corporation about the transaction before it is entitled to accept the endorsed instrument. La.R.S. 9:3804.[2]
Plaintiff's knowledge concerning the purposes of the loan and concerning the use plaintiff was making of the proceeds of the loan, constituted actual knowledge that O'Bryan was breaching his fiduciary relationship with Pine Belt within the contemplation of La.R.S. 9:3804 and under these circumstances plaintiff bank was bound to inquire of Pine Belt with regard to whether or not its president had the authority to endorse in blank the cashier's check and deliver it to the bank in payment of the debts of Sanders and Stephenson. The bank was fully aware of O'Bryan's lack of authority when it received back its cashier's check which it had delivered to O'Bryan simultaneous with O'Bryan signing the note, and under these circumstances the note creates no binding obligation against Pine Belt who received no consideration for it.
Plaintiff bank had received from Pine Belt prior to the institution of this suit funds more than adequate to pay in full Pine Belt's principal and interest obligation created by its April 18, 1973 note payable to the bank and plaintiff possessed no other valid notes owed by Pine Belt to which any of these payments could be attributed. For these reasons Pine Belt has established its defense of payment of this note.
Plaintiff has no claim against O'Bryan and Sanders on the continuing guaranty agreements they signed to guarantee payments of Pine Belt's debts to the plaintiff because Pine Belt owed the plaintiff naught. For the same reason plaintiff has no right to assert a claim on the collateral notes pledged by Sanders and O'Bryan as security for Pine Belt's obligation.
For the reasons assigned the judgment appealed from is REVERSED and plaintiff's demands are rejected with all costs below and on appeal assessed against plaintiff.
NOTES
[1] "RESOLVED that pursuant to the need of the co-operative for additional monies in connection with equipment rentals and acquisition the President of the association be and he is hereby authorized to borrow on behalf of the association from the First National Bank of Ruston, sum or sums of money up to $20,000 and to execute any and all notes, pledges, or other security devices required in order to effectuate and complete said loan, further that in the absence of the President, either the Vice-President, that is, John G. Jones or Martin S. Sanders, Jr., in co-signature with the Secretary-Treasurer, Linda S. Wise, are authorized to make the same loan and jointly execute the same required instruments."
[2] ". . . if any negotiable instrument payable or endorsed to his principal is endorsed by a fiduciary empowered to endorse such instrument, on behalf of his principal, the endorsee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in endorsing or delivering the instrument and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith."